CHARLES DEITRICH, et al., v. GEORGE W. LANG.

1. DESCRIPTION OF MORTGAGED PREMISES; *Pleading; Default; Record.* Where in a foreclosure suit the petition described the mortgaged premises correctly, a decree entered by default cannot be avoided by showing that the record of the mortgage in the books of the office of the register of deeds misdescribed the premises.

2. DECREE *upon Default; Avoiding Decree.* Where such petition alleged that the plaintiffs were the legal owners of the note and mortgage by virtue of a deed of assignment, referred to as of record in the office of the register of deeds, a decree by default will not be avoided by showing that the assignment conveyed only partnership property where the note appeared on its face to have been given to one of the partners individually, and not indorsed.

3. CONSTRUCTIVE SERVICE; *Affidavit for Publication.* Where service by publication was made during the late war, a publication founded upon this recital in the affidavit, to-wit, "that the said A. B. M. has removed from the state of Kansas and now lives in the so-called Southern Confederacy, as he is informed, and that service of a summons cannot be made on the said A. B. M., within the state," was sufficient to authorize the entry of a decree for the foreclosure of a mortgage.

### Error from Leavenworth District Court.

ACTION to foreclose a mortgage, brought by *Lang* against *Deitrich* and wife. *Lang* had sold the mortgaged premises to *Deitrich,* and the notes and mortgage sued upon were given for the unpaid purchase-money of said premises. The notes were signed by *Charles Deitrich,* only. It is shown by the record, and is conceded by the parties, that the judgment of the district court is supported by sufficient pleadings, and that a good *prima facie* case was made by the evidence; but *Deitrich* and wife, for a defense to the action, relied upon a supposed failure of *Lang's* title, and consequent breach of the covenant of seizin in the deed of *Lang* to *Deitrich.* *Deitrich* went into possession under said deed, and had not been disturbed in the possession or enjoyment of the property. The *Deitrichs* made no offer in their answers to restore the property, and *Rosa Deitrich,* the wife, in her answer, while resisting the action upon the notes sued on claimed a homestead-

right in the premises. The alleged defect of title arises from a foreclosure-sale of the lots in question under a judgment of the district court of Leavenworth county rendered in 1862 in favor of Eugene B. Allen, and others, Trustees, &c., v. Andrew B. Miller, which judgment was rendered upon default, upon constructive service. The *Deitrichs* claim that the affidavit for service by publication, in said case of Allen v. Miller, showed on its face that the court had no jurisdiction of the person of the defendant Miller. The proceedings were otherwise conceded to be regular, and the sheriff's deed to Allen, the purchaser at the foreclosure sale, (which deed was recorded on the 23d of December, 1862,) is admitted to be good in form, containing proper recitals, etc. So much of the affidavit in the case of Allen v. Miller as is material, is recited in the opinion. The action of *Lang* against *Deitrichs* was tried at the September Term 1872 of the district court. The plaintiff had judgment for the amount due on the notes, and a decree of foreclosure and sale, and *Deitrich* and wife bring the case here for review.

*English & English*, for plaintiffs in error:

Lang's title was and is defective, for the following reasons: 1st.–In the case of Allen v. Miller, the court acquired no jurisdiction to render judgment, because the affidavit was such as contradicted the right to exercise jurisdiction. 2d.–The decree rendered was such as the court had no right to render; it was an order to sell property not described in the mortgage, there being no averment of mistake. 3d.–The proceedings do not aver or show title to the mortgage and note; but, on the contrary, the averments of the petition and the papers cited thereon show that no such title was ever in the plaintiff in said suit.

We are aware that the supreme court of the United States, (11 Wallace, 581,) has made a decision which seems in conflict with our view of this case; so has this court in *Foreman v. Carter*, 9 Kas., 674. Yet in both these cases the record shows that the party in default was himself seeking to set

aside the action of the court, and that he was voluntarily out of the jurisdiction of the court, and within the enemy's lines. So, also, is it with every case which has been reported, taking that view of the point. In the case at bar quite another question is presented. The record itself fails to show that the court had jurisdiction. The proposition to aid the record by oral testimony is a new project—one, it strikes us, which cannot and ought not to be tolerated in any court, and certainly the cases referred to do not warrant such a proceeding.

If it be true, as stated in the affidavit of Allen to authorize publication, that the defendant Miller was in the *Southern Confederacy* during the war, and no explanation of that statement appears in the record, every presumption must be against the validity of the judgment, because of the extraordinary mode of acquiring jurisdiction; and the case of *Dean v. Nelson*, 10 Wall., 158, is the proper case to govern. If Miller should himself appear and contest that judgment by suit, the other cases would be in point; but in this case, the defendant in error, Lang, asserts that the proceeding is valid, and it is for him to show by the record that it is so.

But we are unable to understand by what rule of evidence such testimony as that of Beyers and Larimer can be admissible in this case. If it be true that the record is to govern, and the record does not show a valid judgment for the reason that the court rendering the judgment had not jurisdiction over the person of the defendant, Miller, then one very material link in the chain of Lang's title is wanting; and before he has a right to recover in this proceeding, he must come into court with no covenants broken on his part, especially a covenant amounting to a condition precedent, going down to the very bottom of his right to recover, in regard to the title to the thing conveyed, for which the money sought to be recovered was given.

*Green & Foster*, for defendant in error:

1. There was no defect in Lang's title. The decree in the case of Allen v. Miller was valid. The affidavit for service

by publication made by Allen shows that the action was one in which service by publication was proper, and that the defendant Miller had *removed* from the state of Kansas, and that service of a summons could not be made on him in said state. It is true that the affiant Allen further stated that he was *informed* that the defendant Miller *then* resided in the so-called Southern Confederacy; and this statement in the affidavit the plaintiffs in error claim deprived the court of jurisdiction. We say, not so. The affidavit was good and complete without the statement that affiant was *informed* that Miller resided in the Southern Confederacy; and, as that was stated merely as upon *information,* it is not conclusive of the fact, and there must have been an adjudication by the court upon the point of the validity of the service before exercising jurisdiction; and its adjudication upon that point cannot be attacked collaterally, but is as conclusive on the parties as any other fact decided in the cause, unless the invalidity of the service *affirmatively* appears from the record; (*Hahn v. Kelly,* 34 Cal., 391;) and we submit that such invalidity does not appear simply because of the statement upon *information* in the affidavit.

2. We submit also, that the jurisdiction of the court was not destroyed by that statement in the affidavit, because it might have been literally true, and still the jurisdiction of the court preserved. Plaintiffs in error rely on the authorities to the effect that during a war, contracts between *citizens* of the opposing belligerents are suspended and cannot be enforced, even by a proceeding *in rem.* This may be true, as a general proposition; but it will be recollected that such parts of rebel states as maintained a loyal adhesion to the Union, or as were from time to time occupied and controlled by the forces of the United States, were excepted from the suspension of intercourse; and Miller may have resided in the so-called Southern Confederacy as stated, but in some part thereof where intercourse was not suspended, and in such case there would be no reason why service by publication might not be

had on him; so that the affidavit might be true and the service nevertheless perfectly good.

3. It is well settled that if a person voluntarily went from a northern state into rebellion, he cannot complain of legal proceedings regularly prosecuted against him as an absentee. (11 Wallace, 581; Chicago Legal News, 350.) The affidavit of Allen for service by publication, says that Miller has *removed* from the state of Kansas, and *now* lives in the so-called Southern Confederacy, as affiant is *informed*. If this statement in the affidavit that affiant was *informed* that Miller lived in the so-called Southern Confederacy is entitled to any importance whatever, it is susceptible of the construction that Miller voluntarily *removed* from the state of Kansas into the rebel states; and the court will give the affidavit such a construction as will save the judgment if it fairly can. But independent of this, the testimony of Beyers and Larimer clearly shows that Miller removed from Leavenworth, and resided in Denver, Colorado, until the fall of 1861. And Larimer further testifies that Miller was a Pennsylvanian by birth, and that he had never lived in any of the southern states until the fall of 1861; and by the testimony of these witnesses, Miller is beyond doubt brought within the rule laid down by the supreme court of the United States in the case of *Ludlow v. Ramsey*, 11 Wallace, 581. Intercourse was only prohibited between *citizens* of the opposing belligerent states; and as Allen and Miller were alike *citizens* of the northern states, intercourse between them was not unlawful, and a hearing in the courts would not have been denied to Miller, though it might have been to a *citizen* of a rebel state. Nor could Miller claim or derive any benefit from his own willful violation of the non-intercourse proclamations in voluntarily abandoning his home and going into rebellion. The plaintiffs in error claim however that the court erred in receiving the testimony of Beyers and Larimer to *aid* the record in the case of Allen v. Miller. We have endeavored to show that the record was complete within itself; but beyond doubt it was competent for the court to hear testimony in

*support* of, and to explain a doubtful implication from the record: Cooley Const. Lim., 407; 6 Wis., 244; 2 Mich., 165; 4 Scam., 536; 49 Penn. St., 23. And the record has not been contradicted by parol, but supported, and the court has simply allowed such facts to be shown as leave no doubt that the assumption and exercise of jurisdiction in Allen v. Miller was rightful.

4. The plaintiffs in error complain of some other irregularities in Allen v. Miller, such as a defective description of the property in the mortgage, etc.; but the property being properly described in the petition for foreclosure, with proper allegations of the execution of the mortgage on that property, this court will presume that the district court had sufficient evidence before it to justify its action.

5. The defendant in error further submits, that as Deitrich has never been disturbed in his possession, and no outstanding claim of title in Miller has ever been asserted, the plaintiffs in error are in no condition to resist the payment of their debt upon a mere suspicion that Miller may some day assert title to the property. The mortgage executed by Miller was to secure an indebtedness of $9,000, and on its face entitled the mortgagee to the possession, rents, issues and profits of the mortgaged property, so that Miller could never get possession of the property without paying a debt now amounting in principal and interest to nearly $18,000, besides paying for the improvements put upon the property since the foreclosure sale. Under these circumstances the court will not countenance Deitrich's refusal to pay his debt, when he makes no offer to restore the property, and his wife claims a *homestead* in it; besides there is no pretense of fraud on the part of Lang, and Deitrich bought with knowledge of the title as it was.

It is further submitted, that if the alleged defect of title had been apparent and conceded (which was not the case) it would then have been incumbent on Deitrich to have shown that he had bought in the outstanding title, or that he had been disturbed in his possession or suffered some loss, and

having failed to show any loss, or that he had sustained any damages, there was no proof before the court that would authorize an assessment of damages, and therefore the judgment is right.

The opinion of the court was delivered by

BREWER, J.: Lang brought his action to foreclose a mortgage. Deitrich answered that the mortgage-debt was a balance of the purchase-money of the mortgaged premises, and that there was a covenant in Lang's deed to Deitrich that Lang "was well seized of the premises, and had good title in fee for the premises," which was broken, hence the title of Lang was not good. The only question then was as to the sufficiency of Lang's title. The alleged defects are these: In Lang's chain of title appears a mortgage-deed from Andrew B. Miller to Wm. H. Russell, of the firm of Russell, Majors and Waddell, and a foreclosure of such mortgage by Eugene B. Allen and Alexander Street, assignees of Russell, Majors & Waddell. It is claimed that the proceedings in this foreclosure suit were insufficient to transfer title, because, first, the mortgage-deed described the property as "lots 15 and 16 in block 27, in the county of Leavenworth," without stating in what city or addition the lots were, and the petition alleged no mistake, and asked for no reformation of the mortgage. The original mortgage was not in evidence in this action, but only the record copy in the office of the register of deeds. The petition in the foreclosure suit described the property as in Leavenworth city proper, and did not contain any copy of the mortgage. This objection therefore is not good, because the original mortgage may have described the lots as in Leavenworth city, the default of Miller admitted the allegation that the mortgage was of lots in Leavenworth city, and there is nothing to show that the description was not complete without the *words* "Leavenworth city," or that there was any other property in Leavenworth county which could be described as "lots 15 and 16 in block 27."

A second objection is, that the proceedings do not aver or show title to the mortgage and note, but that, on the contrary, the averments of the petition and the papers cited therein show that no such title was ever in the plaintiffs in said suit. The note and mortgage were to Wm. H. Russell individually. The petition alleges that "the plaintiffs are the legal owners of said note as the surviving trustees of the said Wm. H. Russell, by virtue of a certain deed of trust executed, etc., and recorded in the office of the register of deeds of Leavenworth county." An examination of that deed shows, it is said, that only the partnership property of Russell, Majors & Waddell was conveyed to said plaintiff. This objection also is not well taken. The plaintiffs had possession of the note, and filed it with the papers of the case. They alleged that they were the legal owners, and the default admitted the fact. Though the note was taken in the name of Wm. H. Russell alone, it may all the time have been partnership property, or having been individual property in the first instance it may afterward have been turned into the partnership assets. At any rate, if the payee is willing that it should be treated as partnership property, and turns it over to the assignees, and the payor makes no objection but suffers judgment to go in the names of the assignees, a subsequent purchaser of the title thus acquired, with full notice of all these proceedings, will hardly be permitted on this ground to avoid the payment of his notes for the purchase-money.

The third and last, and indeed the main objection is, that Andrew B. Miller, the mortgagor, was never brought into court, so that a valid decree could be rendered against him; that the affidavit for publication disclosed such a state of facts as prevented the court from acquiring jurisdiction. The only service was by publication, and in the affidavit for publication this is the recital of non-residence:

"And the said Eugene B. Allen further saith that the said Andrew B. Miller has removed from the state of Kansas, and now lives in the so-called Southern Confederacy, as he is informed, and that service of a summons cannot be made on the said Andrew B. Miller within this state."

The plaintiffs in error claim that this affidavit shows that Miller was within the limits of the Southern Confederacy, and that by proclamation of the president intercourse was suspended between the citizens of the loyal and those of the rebel states, and that therefore no contract of Miller's could be enforced, even by a proceeding *in rem*. That as a general rule a state of war suspends contracts between belligerents, and prevents any proceedings to enforce them, no one will seriously question, though it has been denied that this rule goes so far as to stay proceedings *in rem*. *Dean v. Nelson*, 10 Wall., 158; *Dorsey v. Dorsey*, 30 Md., 522; *Meyer v. Subley*, 53 Ill., 61. But we think it also well settled that if a person voluntarily went from a northern state into rebellion, he cannot complain of legal proceedings regularly prosecuted against him as an absentee. *Ludlow v. Ramsey*, 11 Wall., 581; *Harper v. Ely*, 2 Chicago Leg. News, 350; *Foreman v. Carter*, 9 Kas., 674. Now we think a fair construction of this affidavit brings the case within this rule. The note on which suit was brought was executed in Kansas. The affidavit alleges a removal. That implies a residence, which by voluntary act has been changed. An involuntary change would hardly be characterized by the active voice of the verb "remove." But it may be said this does not allege a removal since the commencement of the war, and to aid the rebellion. True; but it does not allege that it was not since that time, nor for that purpose. Residence once acquired is presumed to continue until a change is shown. The affidavit does not show that Miller was entitled to the protection of the president's proclamation, or the rights of belligerents. It tends rather to show that he was not. And before the courts will declare judicial proceedings, regularly had, to subject property within this state to the payment of debts contracted here, void on the ground that the debtor was within rebel lines, and could not be sued, it must be made clearly to appear that he was entitled to the rights of belligerents. It is said however that this objection is not made by the debtor, but by a purchaser, objecting to a doubt-

ful title.  If the objection was made, before the conveyance, to being compelled to complete a contract of purchase, and not after the conveyance to the payment of the balance of the purchase-money, the objection might perhaps be entitled to more consideration.  The title of the purchaser as against Miller would be no stronger, even. if the affidavit simply alleged non-residence, and contained no intimation as to Miller's present residence.  For if, as a matter of fact, Miller was entitled to the rights of a belligerent he would not be concluded by the silence of the affidavit.

The judgment of the district court will be affirmed.

All the Justices concurring.