## T. A. HARRIS V. WM. CLAFLIN.

1. AFFIDAVIT FOR PUBLICATION —*Jurisdiction*—*Voidable Proceedings.* If there is a total want of evidence upon a vital point in the affidavit for publication, the court acquires no jurisdiction by publication of the summons; but where there is not an entire omission to state some material fact, but it is inferentially or insufficiently set forth, the proceedings are merely voidable.

2. AFFIDAVIT, *Fatally Defective.* Where the affidavit for publication does not state directly, inferentially, or in any other way, that the action brought is one of those mentioned in § 72 of the civil code, the affidavit is fatally defective, and service by publication cannot be obtained thereon.

3. ———— *Shields v. Miller,* 9 Kas. 390, followed.

4. ———— *Deitrich v. Lang,* 11 Kas., distinguished.

### Error from Shawnee Superior Court.

ON November 15, 1884, *T. A. Harris* commenced an action in the district court of Shawnee county in the nature of ejectment, against Wm. Claflin, for the possession of the east half of the southeast quarter, section 28, township 12, range 14, in Shawnee county, excepting therefrom one acre occupied by School District No. 31. On March 18, 1885, the case was transferred by the district court of Shawnee county to the superior court of that county. Trial had May 18, 1885. Judgment rendered September 5, 1885, for defendant. The court made and filed the following conclusions of fact:

"1. On the 25th day of July, 1859, Lee M. Clark was the owner in fee of the land in controversy in this suit, viz.: The east half of the southeast quarter of section twenty-eight, town twelve, range fourteen east, in the county of Shawnee; and on said day said Clark made, executed and delivered to John W. Brown a mortgage on said premises, to secure the payment of twenty-five dollars in six months from the date of said mortgage, with interest at the rate of five per cent. per month until paid; and said mortgage was, on the 31st day of August, 1859, duly recorded in the register's office of Shawnee county, in volume 3, on page 47 of the records of deeds.

"2. On the 20th day of May, 1861, John W. Brown assigned

and transferred said mortgage to Nathan P. Case, and on the 5th day of June, 1861, Case, as the owner and holder of the mortgage, commenced a suit against Clark in the district court of Shawnee county, to foreclose said mortgage.

"3. At the time of the commencement of said foreclosure suit, Lee M. Clark was, and for several years thereafter he continued to be, a non-resident of the state of Kansas.

"4. Process of summons was duly issued from said court against Lee M. Clark on the 5th day of June, 1861, directed to the sheriff of Shawnee county to execute, returnable according to law, and it appears by the return of the sheriff on said summons that Lee M. Clark could not be found in said county.

"5. On the 5th day of June, 1861, an affidavit was made and filed in said suit, in the words and figures following:

"'THE STATE OF KANSAS, COUNTY OF SHAWNEE, ss.—*In the Third Judicial District, Shawnee County, Kas., October Term, 1861.*—Nathan P. Case, Plaintiff, *v.* Lee M. Clark, Defendant.—Affidavit for Publication.—A. H. Case, being first duly sworn, doth depose and say that he is the attorney for the plaintiff in this suit, and that Lee M. Clark, defendant in the above-entitled cause, is a non-resident of this state, and when last heard from by this defendant, resided in the state of Illinois, and that to the best of his knowledge and belief, personal service of a summons cannot be made upon defendant in this state.   And further saith not.
                                                                    A. H. CASE.
"'Sworn to and subscribed before me, this 5th day of June, 1861.
                                                            JAMES FLETCHER, *Clerk.*
                                                            By H. McARTHUR, *D. C.*'

"No other affidavit for publication of notice to defendant in said cause was produced in the trial.

"6. On the 14th day of October, 1861, there was filed in said cause an affidavit of publication, with a printed notice attached thereto; which affidavit and printed notice are in the words and figures following:

"'THE STATE OF KANSAS, SHAWNEE COUNTY, ss.—*N. P. Case v. Lee M. Clark.*—E. G. Ross, being first duly sworn, doth depose and say: That the annexed notice was published in the *State Record*, in the city of Topeka, Shawnee county, Kansas, a newspaper of general circulation in said county, for seven weeks, as follows, to wit, the first insertion being made on the 7th day of June, 1861; the second, on the 14th day of June, 1861; the third, on the 21st day of June, 1861; the fourth, on the 28th day of June, 1861; the fifth, on the —— day of July, 1861; the sixth, on the —— day of July, 1861; the seventh, on the —— day of July, 1861.   And further saith not.                          E. G. ROSS.
"'Sworn and subscribed before me, this 8th day of October, 1861, as witness my hand and seal of office.                    A. H. CASE,
"'[Seal.]                                                          *Notary Public.*

"'NOTICE.—Lee M. Clark, of the state of Illinois, will take notice, that Nathan P. Case, of the state of Kansas, did, on the 5th day of June, 1861, file his petition in the district court, sitting in and for the county of Shawnee, in the third judicial district in the state of Kansas, against the said Lee M. Clark, defendant, setting forth that the said Lee M. Clark gave a mortgage to one John W. Brown on the east half of the

southeast quarter of section twenty-eight, township twelve, and range fourteen east, to secure the payment of twenty-five dollars, according to the tenor and effect of said mortgage, and praying that said Lee M. Clark may pay said sum of money now claimed to be due, with interest thereon from the 25th day of July, 1859, at the rate of five per cent. per month, or that the said premises may be sold to pay the same; which said mortgage was duly assigned and delivered to the said plaintiff by the said Brown, on the 20th day of May, 1861; and the said Lee M. Clark is notified that he is required to appear and answer said petition within twenty days after the 22d day of July, 1861, or judgment will be entered against him by default.

"'Topeka, June 5, 1861.　　　　　　　Nathan P. Case.
　　　　　　　　　　　　　　　By his attorney, A. H. Case.

"'Attest:　James Fletcher, Clerk.
　　　　By H. McArthur, D. C.'

"7. No other service of process than as above set forth was had upon defendant Lee M. Clark, in said foreclosure suit, and he did not enter his appearance in said suit, nor any one for him.

"8. On the 5th day of June, 1861, a petition was filed in said cause by plaintiff, Nathan P. Case, showing on its face a cause of action in favor of him, the said Nathan P. Case, against Lee M. Clark, for the foreclosure of said mortgage.

"9. On the 14th day of October, 1861, a judgment or decree was entered by the court in said cause, in the words and figures following:

"'Nathan P. Case v. Lee M. Clark.—And now comes the said Nathan P. Case, by A. H. Case his attorney; and the said Lee M. Clark still failing to demur or answer to the said petition, it is considered that the plaintiff ought to recover the amount due him by reason of the premises, and the court with the consent of the plaintiff finds that there is due from the defendant to the plaintiff on the mortgage set forth in said petition the sum of $63.84. It is therefore considered by the court here that the plaintiff recover of the defendant the sum of $63.84, the sum so found due as aforesaid, as also his costs, taxed at $——. And it is considered and adjudged that in case the defendant fails for ninety days from the closing of this term of court to pay the plaintiff the sum of $63.84, so as aforesaid found due, with costs of suit, that an order issue to the sheriff of said county, commanding him to cause the said lands and tenements in the petition described, to wit, the east half of the southeast quarter of section twenty-eight, township twelve, range fourteen east, in the state of Kansas, to be appraised, advertised and sold according to law, and apply the proceeds of said sale in satisfaction of said judgment as aforesaid rendered. And it is further ordered and adjudged, that the defendant be and he is hereby forever barred of all rights of equity of redemption in and to said mortgaged premises.'

"10. In pursuance of said decree, an order of sale was issued for the sale of said land, and the same was appraised and advertised, and on the 22d day of May, 1862, sold at public sale by the sheriff of said county, to Nathan P. Case and A. H. Case, for the sum of $84, and on the 29th day of May, 1862, said sale was confirmed by the order and judgment of said court, and the sheriff was ordered to make and

35 — 36 kas.

execute a deed of said land to purchasers, Nathan P. Case and A. H. Case.

"11. In pursuance of the order and judgment of said court, the sheriff did, on the 18th day of June, 1862, make, execute and deliver a sheriff's deed of said land to Nathan P. Case and A. H. Case, which deed was afterward, on the 20th day of June, 1862, recorded in the office of the register of deeds of said county, in vol. 6, on page 483 of the records of deeds, and said deed was in due form of law.

"12. At the time of said sheriff's sale, in 1862, said land was vacant and unimproved, and not in fact worth any more in cash than the amount at which it was appraised prior to said sale, to wit, $125.

"13. At the time of the commencement of this present suit in 1884, said land was worth $10 per acre.

"14. On the 26th day of February, 1863, Nathan P. Case and his wife executed and delivered to the defendant William Claflin a warranty deed of the undivided one-half of said land, which deed was on the day it bears date filed for record and recorded in vol. 7, on page 171, in the register's office of Shawnee county.

"15. On the 26th day of February, 1863, A. H. Case and wife made, executed and delivered to the defendant William Claflin a warranty deed of the undivided one-half of said land, which deed was filed for record on the day it bears date, and recorded in vol. 7, on page 168, in the register's office of said county.

"16. The defendant, William Claflin, under claim of ownership by purchase as aforesaid, in good faith paid all the taxes on said land each year from 1866 to 1883, both inclusive. Lee M. Clark paid all the taxes assessed on said land prior to and including those assessed for the year 1865.

"17. D. S. Skinner, a resident of Topeka, Kansas, acted as the agent of William Claflin in the payment of said taxes, and on one occasion negotiated, as such agent, a sale of one acre of said land for a school-house site, and in pursuance of such negotiation and sale, Claflin and wife, on the 1st day of July, 1882, executed and delivered to School District No. 31, a warranty deed of one square acre of said land, properly described in said deed, which deed was filed and recorded in the register's office of Shawnee county, in vol. 86, on page 143, on the 14th day of October, 1882.

"18. Claflin was never in the state of Kansas, and he resides in Boston, Massachusetts.

"19. Lee M. Clark returned to this state in the year 1873, and located in Atchison county, and has continued to reside there ever since.

"20. Lee M. Clark never took actual possession of said land, and did not look after it or pay any attention to it in any way, except to remit money to pay taxes, to and including the year 1865, from the time of said foreclosure suit up to August, 1884, when he was called upon by H. H. Harris, the husband and agent of the plaintiff, and then for the first time learned of said foreclosure proceedings. Previous to August, 1884, Clark had no actual knowledge of the foreclosure of said mortgage, except so far as said public records impart knowledge.

"21. H. H. Harris, attorney for plaintiff in this suit, is the husband of plaintiff, and the owner of a tract of land adjoining the land in controversy on the west. In April or May, 1884, plaintiff went with her husband to see his land, and passed over the land in controversy in this suit; and she then expressed a desire to become the owner in her own name of the land in controversy, and authorized her husband to ascertain who owned the land and to buy it for her. Prior to that time H. H. Harris, the husband of the plaintiff, had made an examination of the public records of Shawnee county to find who was the owner of the land in controversy, and in his search saw and examined all the deeds and foreclosure proceedings and tax records showing the payments of taxes by defendant, as recited in the above proceedings; and thereafter, that is, after plaintiff's request as above stated, by correspondence and inquiries learned the place of residence of Lee M. Clark, and went to see him in August, 1884, and purchased said land of him for the sum of $50, which sum he then paid to Clark out of his own money, and took a quitclaim deed for said land from Lee M. Clark and Nancy B. Clark, his wife, to T. A. Harris, plaintiff herein, bearing date August 28, 1884, and which was, on the 30th of said August, duly recorded in vol. 94 of deeds, on page 378, in the register's office of Shawnee county.

"22. On the 30th day of August, 1884, H. H. Harris, as agent of the plaintiff, went upon said land and put two signs on posts, one near the south end near a road and one near the east side near a road, each of said signs reading as follows: 'Keep off this land.—T. A. HARRIS, owner.'

"23. H. H. Harris also on 30th of August, 1884, as agent of plaintiff, employed one Noah Hackley to plow a hedge-

row of from four to six furrows on the east, north and south sides of said land, leaving a space of about two rods on the edge of said three sides for public roads, and Hackley, in pursuance of such employment, did, on the first day of September, 1884, plow some four or five furrows on the three sides of said land, about two rods in from the out edge of said three sides, except at the southeast corner of said land, where there is a draw or sag in said land, there were no furrows plowed for about twenty rods, both on east and south sides. There was a public traveled road on three sides of said land, and in some places on the north and east sides said road turned for several rods onto said land, and then back to the edge, or near the edge, and in plowing furrows around said land, as aforesaid, said road was crossed several times on the north and east sides of said land, and no plowing was done over or across said road, and said road continued to be traveled without interruption by reason of such plowing. H. H. Harris owned the adjoining tract of land on the west, and there was no fence between said two tracts, except the one built by defendant, inclosing said land as aforesaid.

"24. In September, 1884, and before said land was fenced by defendant, H. H. Harris told D. S. Skinner, of Topeka, as the agent of defendant, that he (Harris) was in possession of said land, having had some plowing done on it.

"25. In the latter part of October, 1884, a post and barbed-wire fence was built by defendant around said land, which fence was set in about two rods from the north, east and south sides of said land, and was set some of the way in the furrows that had been plowed by Hackley, as aforesaid, and it was built across the traveled road on three sides wherever said road bent in on said land beyond said strips of two rods on the out edge, and said fence was built by defendant on three sides as aforesaid, and on the line, on the west side, and was sufficient to turn stock and prevent public travel over said land, except on the roadway or strips left on said three sides thereof. Said fence was built by defendant so as to not include said school acre. Hackley informed the agent of defendant who built said fence, that lawyer Harris, of Topeka, had had said furrows plowed around said land on three sides as aforesaid; at same time said Welch offered to pay Hackley for doing said plowing, and Hackley refused to accept.

"26. At the time H. H. Harris purchased said land from Clark, as aforesaid, he knew that D. S. Skinner, of Topeka, was the agent of the defendant, and knew that Skinner had

been acting for several years as the agent of defendant, and frequently met Skinner in Topeka, but made no inquiries of him as to the extent of his agency, or of the claims of defendant to said land.

"27. Lee M. Clark testified in his deposition, filed in this cause, that he had always claimed an interest in the land up to the time he executed the deed to plaintiff.

"28. The defendant did not have the consent of the plaintiff to take possession of said land, or to build said fence thereon.

"29. Plaintiff offered on the trial that the court might find the amount of taxes paid on land in controversy by defendant, with interest thereon at seven per cent. until the time of judgment herein, and if the amount should not be paid in sixty days from the date of judgment, said land should be sold therefor."

And thereon the court made and filed the following conclusions of law:

"1. Lee M. Clark did not by any act or deed claim or show any interest in the land in controversy after he paid the taxes assessed thereon for the year 1865, until he executed to the plaintiff in August, 1884, the deed under which plaintiff claims title in this suit.

"2. The acts and proceedings on the part of plaintiff respecting said land did not constitute possession thereof.

"3. Said land, except the one-acre tract sold and conveyed to the school district by the defendant, was vacant and unoccupied, and wholly unimproved until defendant Claflin took actual possession thereof by inclosing it with the fence described in the twenty-fifth finding of fact.

"4. The plaintiff is not entitled to recover in this action."

Upon the foregoing findings of fact and conclusions of law, the court adjudged that the plaintiff take nothing by her petition herein, and that the defendant recover of and from the plaintiff his costs herein.   New trial denied.   The plaintiff brings the case here.

*H. H. Harris*, for plaintiff in error.

*Welch, Lawrence & Welch*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action for the recovery of real property. Lee M. Clark was the patentee of the land, and both parties to the action claim title from him. The plaintiff claims under a deed executed by Clark, August 28, 1884, and recorded August 30, 1884. The defendant claims title under the foreclosure of a mortgage executed by Clark to John W. Brown, and assigned by Brown to N. P. Case. At the sale of the land under the foreclosure of the mortgage, A. H. Case and N. P. Case purchased the same. On February 26, 1863, N. P. Case and wife and A. H. Case and wife executed warranty deeds of the land to the defendant. Lee M. Clark paid all the taxes assessed on the land prior to and including those for 1865. The defendant paid all the taxes on the land from 1866 to 1883, inclusive. This action was commenced November 15, 1884. At the time of the sale of the land under the decree of foreclosure on May 22, 1862, the land was worth $125. At the time of the commencement of this action the land was worth $10 per acre. Clark never took actual possession of the land, but in September, 1884, plaintiff claimed to have obtained possession thereof. In October, 1884, the defendant built a post-and-barbed-wire fence around the land, and took actual possession thereof. The principal question presented is, as to the jurisdiction of Clark by the court rendering the judgment of foreclosure and sale. The service of the summons, in the action for the foreclosure of the mortgage, was by publication in a newspaper. The defendant, Lee M. Clark, was never personally served and never made any appearance. The plaintiff, in his case, claims that the service by publication in the foreclosure case was void, and therefore that the court rendering the judgment never obtained any jurisdiction of Clark, and that the judgment in the case, and all proceedings under it, including the sheriff's deed to N. P. Case and A. H. Case, the creditors of the defendant, are void.

The affidavit for publication was filed June 5, 1861, but

omitted to state "that the case is one of those mentioned in the preceding section." (Civil Code, §§ 72, 73.) Within the authority of *Shields v. Miller*, 9 Kas. 390, the affidavit is fatally defective, and therefore the attempted service by publication a nullity. Without a valid service in such a case, every subsequent proceeding, including the judgment, the execution or order of sale, the sale and the deed must necessarily be void. The rule is: If there is a total want of evidence upon a vital point in the affidavit, the court acquires no jurisdiction by publication of the summons; but where there is not an entire omission to state some material fact, but it is inferentially or insufficiently set forth, the proceedings are merely voidable. (*Pierce v. Butters*, 21 Kas. 124; *Atkins v. Atkins*, 9 Neb. 191; *Ogden v. Walters*, 12 Kas. 282; *Claypoole v. Houston*, 12 id. 324; *Frazier v. Miles*, 10 Neb. 109; *McGavock v. Pollack*, 13 id. 538; *Holmes v. Holmes*, 15 id. 615.)

The defendant cites the case of *Pierce v. Butters*, supra, in support of his claim, that even if the affidavit for publication is not sufficient to give the court jurisdiction, the court may examine the whole record; and if all the other proceedings are regular, then the court had jurisdiction. In *Pierce v. Butters* the affidavit was defective, but not void; and all the defects in the affidavit were cured by the filing of a new and amended affidavit. The amended affidavit was amply sufficient. That case is not in conflict with *Shields v. Miller*. The case of *Deitrich v. Lang*, 11 Kas. 643, is referred to under a misapprehension. The affidavit in that case states that—

"A petition had been filed against said Andrew B. Miller, defendant, praying that certain lands, situated in the city of Leavenworth, Leavenworth county, state of Kansas, may be decreed to be sold to satisfy a mortgage given by said Andrew B. Miller to the said Wm. H. Russel to secure the payment of a certain sum of money therein named; and that the said plaintiffs are now the legal owners of said note referred to."

Only a portion of the affidavit for publication is recited in the opinion, but the affidavit is set forth at length in the record of the case.

Upon the findings of the trial court the judgment must be reversed, and the cause will be remanded, with direction that judgment be entered for the plaintiff.

VALENTINE, J., concurring.

JOHNSTON, J., dissenting.