## S. J. BRYAN v. WM. CONGDON.

1. AFFIDAVIT, *When a Part of Record.* An affidavit filed under the provisions of the code of civil procedure, as a basis on which process is issued ministerially by the clerk of the court, becomes a part of the record in the case.

2. ARREST IN CIVIL ACTION — *Sufficiency of Affidavit.* An affidavit filed under § 148 of the code of civil procedure to obtain an order for the arrest of the defendant becomes a part of the record, and where its sufficiency is attacked by motion, and sustained by the district court, its ruling thereon may be reviewed by this court without incorporating the affidavit in a bill of exceptions. Being a part of the record, it may be included in the transcript of the proceedings of the trial court.

3. AFFIDAVIT, *When Insufficient.* An affidavit for the arrest of the defendant in a civil action brought to recover the value of a quantity of wheat deposited by the plaintiff in the warehouse of the defendant, for which negotiable receipts were issued by the defendant, which charges an unlawful sale and conversion of the wheat by the defendant without the written assent of the plaintiff, but fails to state either that there was no oral assent, that the plaintiff was still the owner and holder of the receipts, or that the receipts were returned or presented to the defendant to be surrendered on delivery of the wheat, is insufficient to warrant the arrest of the defendant.

4. STORAGE OF GRAIN — *Title.* Grain deposited in a public warehouse, recipted for under the provisions of chapter 248 of the Laws of 1891, to be mingled with other grain, does not thereby become the property of the warehouseman; but the grain stored in a warehouse of a particular kind and grade is the property of the holders of the receipts outstanding against it.

*Error from Harvey District Court.*

ACTION by *Congdon* against *Bryan* to recover the value of certain wheat delivered by plaintiff to defendant to be stored in the latter's public warehouse, and which plaintiff alleged defendant converted. On affidavit by plaintiff that the debt for which the action was brought was fraudulently contracted, the court entered an order for the arrest of defendant. There was an order refusing to vacate the order of arrest, which order the defendant brings here for review. The facts sufficiently appear in the opinion herein, filed October 6, 1894.

*A. L. Greene*, for plaintiff in error:

1. Before an order of arrest can rightfully issue, there should be an allegation of such facts as, uncontradicted or unexplained, show that the charges of fraud made in the affidavit are true. A fact or facts which simply raise a suspicion of guilt, or point to a possibility of fraud, are insufficient; a chain of circumstances which is consistent with a fraudulent purpose will not be enough. The facts stated must establish the fraud; nothing less than this will give reasonable effect to the statute. *Gillett v. Thiebold,* 9 Kas. 431; *Spicer v. Steinruck,* 14 Ohio St. 213.

2. The affidavit is insufficient for another reason. The affidavit shows that, by the consent of Congdon, the wheat he deposited was to be mixed with other wheat, dumped into the general mass, to which additions were made daily, both by purchases made by the operator and by additional deposits, and from which quantities were being daily taken for shipment and sale by the operator and for delivery to or sale for other depositors. These facts are of such common knowledge that parties and courts must recognize them; and such conditions are as much a part of the contract as if stipulated in the receipt. Congdon did not contract for nor did he expect any of the wheat which he deposited to be returned to him. All he could get, and all he expected, was that he would get an equal number of bushels of wheat of a like

quality. This, we contend, does not constitute a bailment, but a sale. The distinction between a bailment and a sale is this: In case of deposit, the bailee is bound to return the specific article deposited; but where the depositary may return another article of the same kind and equal value, it is a sale, and passes the title. Jones, Bailm., § 102; Story, Bailm., § 439; 2 Kent's Comm., p. 781.

See, also, *Chase v. Washburn*, 1 Ohio St. 244; *Richardson v. Olmstead*, 74 Ill. 214; *Lonegan v. Stewart*, 55 id. 45; *Bailey v. Bently*, 87 id. 561; *Rahilly v. Willson*, 3 Dill. 421; *Butterfield v. Lathrop*, 71 Pa. St. 228; *Mallory v. Willis*, 4 N. Y. 793; *Ewing v. French*, 1 Blackf. 353; *Smith v. Clark*, 21 Wend. 83; *Norton v. Woodruff*, 2 N. Y. 153; *Johnston v. Brown*, 37 Iowa, 200; *Carlisle v. Wallace*, 12 Ind. 252; *Nelson v. Brown*, 44 Iowa, 456.

In the case at bar, wheat of equal test and value is all that could be demanded. The title to the grain passed to Bryan, and he cannot be held for conversion.

*Bowman & Bucher*, for defendant in error:

The record shall be made up from the petition, the process, which necessarily means the process issued by virtue of and based upon such petition, and certainly does not include the affidavit for arrest or attachment, and the process issued by virtue of such affidavit. Neither is the affidavit, order of arrest, motion and notice to vacate, any pleading. Civil Code, § 417; *Boston v. Wright*, 3 Kas. 227; *Johnson v. Laughlin*, 7 id. 359; *Rapp v. Kyle*, 26 id. 92.

Affidavits on motions do not of themselves become a part of the record. *Backus v. Clark*, 1 Kas. 303; *Altschiel v. Smith*, 9 id. 90; *McIntosh v. Comm'rs of Crawford Co.*, 13 id. 177; *The State v. Devine*, 49 id. 255.

Attachments and arrest and bail are similar remedies, and the same rules govern. *Burch v. Adams*, 40 Kas. 639. See, also, *Moore v. Cutler*, 18 Kas. 607; *Burns v. Burgett*, 19 id. 162; *Whitney v. Harris*, 21 id. 96; *The State v. Ricker*,

40 id. 14; *Neiswender v. James,* 41 id. 463; *Westbrook v. Schmaus,* 51 id. 214.

However, if the court should be of the opinion that the record was sufficient to give it jurisdiction and challenge its attention, then we submit that the affidavit for the arrest is sufficient. Gen. Stat. of 1889, ¶¶ 1435–1438.

No consent of Congdon while these receipts were outstanding would have justified Bryan in shipping said wheat unless such consent was in writing. Hence no necessity for a statement in the affidavit that-it was shipped or converted without Congdon's consent, either orally expressed or implied. The statement that the wheat was wrongfully converted is a statement equal to one that it was converted without consent.

Counsel for Bryan assumes that grain of like quality was being daily deposited in and withdrawn from the same bin, but we submit that he has nothing in his imperfect and stuffed records from which such an inference can be drawn. There is nothing anywhere in that fold of papers from which it could be inferred that Bryan was a shipper as well as a warehouseman.

The opinion of the court was delivered by

ALLEN, J.: Various objections are raised by the defendant in error to the consideration of the record in this case. We think the certificate of the clerk to the transcript is sufficient, and that there is no difficulty in determining what it contains, or what is referred to in the petition in error as a transcript.

It is next contended, that the affidavit for the arrest of the plaintiff in error is not a part of the record in the case, and that, in order to make it a part of the record and have it considered by this court, it must be incorporated in a bill of exceptions. It is true that it has been often decided by this court that affidavits used as evidence on the hearing of a motion before a district court must be incorporated in a bill of exceptions before they can be considered by this court. But

this affidavit was one filed with the district clerk for the purpose of complying with the provisions of § 148 of the code of civil procedure and obtaining an order for the arrest of the defendant. It was the foundation on which an order of arrest, issued as process of the court by the clerk, was based. Under the statute, no judicial officer was required to pass on its sufficiency. Section 173 of the code provides that the defendant may, at any time before judgment, move the court to vacate an order of arrest, and § 174 reads:

"If the motion be made upon affidavits on the part of the defendant, but not otherwise, the plaintiff may oppose the same by affidavits or other evidence, in addition to that on which the order of arrest was made." Under this section, it is clear that the defendant may at any time before judgment require the court to pass judicially on the sufficiency of the affidavit. Where no counter affidavits are offered in evidence, the sufficiency of the original affidavit is tested in substantially the same manner as the sufficiency of a pleading is tested on demurrer, the court being called on to determine whether the matters stated in the affidavit are sufficient to authorize the order of arrest which had been issued thereon by the clerk. We think an affidavit of this char-

2. Arrest in civil action—sufficiency of affidavit. acter is properly a part of the record, like an affidavit for publication, as it is the foundation on which the process of the court is based. If other affidavits were used on the hearing of the motion to discharge the order of arrest, such affidavits could only be made a part of the record by bill of exceptions, because their only purpose would be to furnish evidence on the trial of a contested question of fact. Affidavits, however,

1. Affidavit, when a part of record. which are required by law to be filed as a prerequisite to the issuance of process, and which are not required to be passed on judicially, may properly be denominated a part of the proceedings in the case, and become a part of the record. It has been repeatedly held by this court, that an affidavit for publication of summons which is totally deficient in a material point confers no jurisdiction,

8—54 KAS.

and may be attacked not only in the case in which it is filed, but in a collateral action at any time. See *Harris v. Claff-lin*, 36 Kas. 543, and cases cited; also, *Adams v. Baldwin*, 49 id. 781.

This action was brought by Wm. Congdon, as plaintiff, against S. J. Bryan, to recover the value of 2,122⅔ bushels of wheat which the plaintiff delivered to the defendant, to be deposited in defendant's public warehouse for storage, which it is alleged the defendant unlawfully converted to his own use. The affidavit filed to obtain the order of arrest, after stating the nature of the case and alleging grounds for the arrest of the defendant in the language of the statute, contains the following:

"That said affiant is justified in the belief of the existence of the above particulars by the following facts and circumstances, threats and declarations: That ever since the 1st day of August, 1892, the defendant has been, and still is, a keeper of a public warehouse for the purpose of storing grain, at the city of Sedgwick, in Harvey county, Kansas; that during the months of August and September, 1892, the plaintiff delivered to and stored with said defendant, in the defendant's warehouse aforesaid, 2,122⅔ bushels of wheat, for which said defendant issued and delivered to said plaintiff three separate warehouse receipts, copies of which are hereto attached, marked 'Exhibits 1, 2, and 3;' that since the storing of said grain as aforesaid said defendant has sold, shipped, transferred and removed said grain beyond the control of said defendant, wrongfully and without the written assent of said plaintiff, and has not now said grain or any grain of like quality to deliver to said plaintiff; and said defendant has wholly failed to reimburse or pay said plaintiff for said grain, so wrongfully shipped, removed, transferred and converted unlawfully and wrongfully to the defendant's own use as aforesaid."

The receipts are all in the same form, and differ only in dates and quantities; No. 1 is as follows:

"CITY ELEVATOR, S. J. BRYAN, PROPRIETOR.     J. W. QUAIL, MANAGER.
         SEDGWICK, KAS., September 24, 1892.

"This certifies that we have received in store from Wm. Congdon seventeen hundred and ninety-seven and twenty bus. No. 2 hard wheat, subject to the order hereon of

Wm. Congdon, and the surrender of this receipt and payment of charges. It is hereby agreed by the holder of this receipt that the articles herein mentioned may be stored with others of the same grade and quality. Loss by fire or heating at owner's risk. This is stored at ½ cent per bus. first month, and ½ cent per bus. second and each additional month or fraction thereof. 107,860 lbs.

> J. W. Quail, *Manager*."

Are these statements sufficient to show that the defendant fraudulently contracted the debt for which suit was brought? The statute requires that the affidavit contain a statement of the facts on which the plaintiff justifies his belief in the ground for arrest. The facts must be sufficient to establish the charge. (*Gillett v. Thiebold*, 9 Kas. 427; *Tennent v. Weymouth*, 25 id. 21; *Hauss v. Kohlar*, 25 id. 640.) The affidavit states that the defendant sold and removed the grain without the written assent of the plaintiff, and counsel for the defendant in error call our attention to ¶ 1437 of the General Statutes of 1889, which reads:

"No warehouseman, wharfinger or other person shall sell or incumber, ship, transfer, or in any manner remove beyond his immediate control any goods, wares, merchandise, grain or other produce or commodity, for which a receipt shall have been given as aforesaid, without the written assent of the person or persons holding such receipt."

On the other hand, it is contended that this section, together with the whole of chapter 206 of the Laws of 1872, of which it was a part, was repealed by chapter 248 of the Laws of 1891. The latter act does not repeal the former by direct reference, but repeals all laws inconsistent with its provisions. It is contended on behalf of the defendant in error, that the act of 1872 is in force, at least as to warehouses having a capacity of less than 75,000 bushels, and that the act of 1891 relates only to public warehouses having a capacity of 75,000 bushels or more. Section 6 of the act of 1891 provides for receipts to be issued by the warehouseman to the owner of the grain, and requires the receipt to state "that the grain represented thereby is deliverable upon the return of the receipt,

properly indorsed by the person to whose order it was issued, and the payment of proper charges for storage." Section 7 provides for issuing a duplicate in case of the loss of the original. Section 8 contains provisions requiring cancellation of the receipt on the delivery of the grain, and also for the surrender of the original receipt and the issuing of new ones, in case of desire to divide the grain and have it represented by two or more receipts. Section 10 provides:

"On the return of any warehouse receipt, properly indorsed, and the tender of all proper charges upon the property represented by it, such property shall be immediately delivered to the holder of such receipt, and shall not be subject to any further charges for storage after demand for such delivery shall have been made."

Whether this case is to be determined by the act of 1872, or by that of 1891, the grain deposited in the warehouse is subject to delivery only to the person holding the receipt. Section 11 of the act of 1872 expressly makes warehouse receipts negotiable instruments, and the provisions of the act of 1891 fully recognize their negotiability. The statement of the affidavit is that the sale and removal was without the written assent of the plaintiff. There is no averment anywhere that the plaintiff was still the holder or owner of the outstanding receipts, nor is there any averment in the affidavit that the receipts had been returned or presented to the defendant and the grain represented by them demanded. Under either act, the defendant not only had a right to refuse to deliver the grain without a return of the receipts, but it was his duty to do so.

The act of 1891 contains numerous provisions designed expressly to prevent warehousemen from having receipts for grain outstanding which do not represent grain actually in store in their warehouse. In order that the defendant might be deprived of his liberty, it was incumbent on the plaintiff to state every fact in the affidavit which was essential to show proper ground for the arrest. One of these facts was that the receipts outstanding were presented by the plaintiff to the

defendant to be surrendered on delivery of the grain. We do not think that even the fact that the defendant had no grain in his possession to deliver on return of the receipts would excuse the plaintiff from presenting them. If the defendant had shipped or delivered the grain in accordance with oral directions from the plaintiff, even assuming that ¶ 1437 of the General Statutes of 1889 is in full force, and applies, could it be said that the defendant had committed a fraud on the plaintiff? It seems to us that assent of the plaintiff to the acts of the defendant, however given, would relieve him from a charge of fraud preferred by the plaintiff in a civil action. The general averments in the affidavit to the effect that the defendant sold and removed the wheat wrongfully and unlawfully do not materially help the matter.

3. Affidavit, when insufficient. They are mere conclusions, and not statements of specific facts from which conclusions can be drawn. We think the affidavit insufficient to authorize an arrest.

We might stop here, and decline to consider the further question, which has been extensivly argued by counsel — whether the transaction stated in the affidavit amounted to a sale of the wheat by the plaintiff to the defendant. Many authorities are cited by counsel for the plaintiff in error, holding that where grain is delivered to a warehouseman to be mingled with other of like kind, and where it is not in expectation or intention of the parties that the same grain will be returned to the depositor, but that on demand he will receive either the same quantity of grain of like kind and grade, or the market price at the time of the demand, the transaction constitutes a sale, and that the title to the grain passes on delivery to the warehouseman. This doctrine appears to be well supported by the authorities cited by counsel. The act of 1891 provides, among other things, that no public warehouseman shall be responsible for loss or damage to grain in store by fire occurring without negligence on his part. It also contains long provisions with reference to the delivery of grain on receipts, and also with reference to the disposition of

grain that is becoming damaged.    The provisions, when construed together, seem to be framed on the theory that the grain in store of a particular grade is the property of the persons holding outstanding receipts against it, notwithstanding its changed identity.    There is nothing in the record in this case showing whether this warehouse has a capacity of 75,000 bushels or not.    The statute of 1872 recognized a distinction between public warehousemen and private warehousemen, and permitted public warehousemen to mix grain of like kind and grade belonging to different owners.    While the act of 1891, in its first section, declares those warehouses having a capacity of 75,000 bushels public warehouses, many of the succeeding sections refer to public warehouses generally, using language broad enough to include all warehouses where grain is stored in bulk and the grain of different owners mixed.    We think, under the act of 1891, the title to the grain 4. Storage of grain stored is in the holders of the outstanding re-
—title. ceipts.    Whether the warehouse of the defendant in this case is governed by the provisions of the act of 1891, we shall not now attempt to decide.    The order of the district court refusing to vacate the order of arrest is reversed.

All the Justices concurring.