J. W. JORDAN, Appellant, v. WM. CRICKETT.

**Fraudulent Conveyances:** CHANGE OF POSSESSION: EVIDENCE.
1   In an action against a sheriff for replevin of a stock of goods held under attachment in which the plaintiff claimed under a prior sale from the attachment defendant, the evidence is considered and held to support a finding that there had been no such change of possession as to charge defendant with notice of the sale.

**Fraudulent Conveyance:** EVIDENCE. On an issue as to whether
2   a sale of a stock of goods was made in fraud of creditors, the evidence is held to show that the transaction was fraudulent.

**Attachment.** FRAUDULENT CONVEYANCE. Property of a debtor in
3   the possession of another under a fraudulent transfer may be attached by creditors of the vendor, attachment by garnishment not being an exclusive remedy.

*Appeal from Mahaska District Court.*—HON. JOHN T. SCOTT, Judge.

TUESDAY, APRIL 12, 1904.

FRED Hobson was the owner of a stock of goods in Barnes City. On the 21st day of April, 1902, he executed a bill of sale thereof to J. W. Jordan, and then absconded. The J. H. Merrill Company began an action against Hobson April 30, 1902, and caused a writ of attachment to issue, which was levied by defendant, as sheriff, on the stock, which was retained by him until delivered t o a receiver for the estate of Hobson in pursuance of an order of court. Other suits were brought, aided by writs of attachment, which were levied on said property as belonging to Hobson. Action in replevin against the sheriff was commenced by plaintiff May 7th of the same year, and the answer put in issue the *bona fides* of the alleged sale. The trial resulted in a verdict and judgment for defendant. The plaintiff appeals.—*Affirmed.*

*Liston McMillen* for appellant.

*John F. & William R. Lacey, H. H. Sheriff, J. C. Williams, John W. Lewis* and *Irving C. Johnson* for appellee.

LADD, J.—According to plaintiff's story, Hobson began negotiations for the sale of his stock of goods early in April, 1902. On Sunday, the 20th of that month, they agreed on

1. FRAUDULENT conveyances: change of possession: evidence.

a price of $3,600, which plaintiff paid in cash. This was without invoice and no change in possession then occurred. They, with Hobson's wife and mother, started for Rose Hill at 3 o'clock a. m. next day, where a justice of the peace prepared a bill of sale to Jordan, which Hobson signed. Hobson and his mother then (shortly after 7 o'clock a. m.) boarded a railway train, and his wife rode back to Barnes City with Jordan, where she delivered the bill of sale to him. He then obtained a key from Hobson's daughter, arranged with Elder, to whom the building had been conveyed the same morning, for its occupancy, and on the following Thursday had boxes procured, and proceeded to pack the goods. Though testifying that he took possession, he gave no other particulars, save that on April 29th, after the merchandise had been packed for ship-

ment out of the state, he caused the contracts of insurance on the stock to be assigned to him. On the other hand, Mrs. Hobson and daughter are shown to have carried the key to the store, and to have continued in charge of the stock of goods, the same as before the alleged sale. The daughter actually procured a part of the boxes, at least, and they both engaged in the packing. No one in the community, aside from the immediate parties to the transaction, knew anything of it. There is nothing in the record indicating that either Mrs. Hobson or her daughter had been employed by plaintiff. The sheriff returned that he served notice of the levy on the plaintiff, as "the person in charge of the within-described property, and in the said building." But he procured the key to let the sheriff in, and subsequently claimed the property, and this was sufficient to justify the service of notice, pursuant to the requirements of section 3900 of the Code. The fact of service and the return were in the nature of admissions, only, and subject to explanation like other similar evidence. The bill of sale was not recorded, and we think this evidence fairly raised the issue as to whether there had been any such change of possession as to charge defendant with notice of sale.

Contrary to appellant's contention, the answer expressly averred that the sheriff acted without notice, actual or constructive, and that plaintiff had never taken possession. The finding that the sheriff levied on the merchandise before receiving notice of plaintiff's claim to the stock is sustained by the evidence.

II. Appellant also contends that the issue of fraud was not raised in the pleadings, and that the finding that the sale was fraudulent is not supported by the evidence. A party, 2. FRAUDULENT under our system of pleading, may interpose conveyance; evidence. inconsistent defenses; and this is what defendant did, in first denying that any sale had been made and then averring that, if this be found otherwise, it was in fraud of creditors. The charge is repeated more specifically in the first amendment. Nor can it be said that the jury was not

warranted in finding the sale fraudulent. That Hobson entertained a fraudulent purpose is not questioned. No invoice was taken. The transaction was kept secret. Within a few days thereafter the plaintiff began packing the goods for shipment out of the state to a place concerning which he had no personal knowledge. Though he denied having made inquiries concerning a location on direct examination, when confronted by the letters received by him from cities and towns in Kansas and Missouri he admitted that he had written letters to which these were answers—some as early as April 14th. Though he asserted at the time of the levy that he had earned the money paid, and denied having borrowed any, he testified on the trial that he had found about $2,300 of it when a soldier in the Philippine Islands, earned about $300 of what he then had, and had borrowed $1,100 of his mother. This tale is somewhat corroborated by his father and mother, who, though sure of having seen gold in their son's army chest, did not count it, and, though testifying to the loan by the mother, are unable to give any satisfactory account of where she obtained the money. He is inclined to think it was some left out of the proceeds of property sold ten of fifteen years before, while she ascribes it to the same source, though saying it is not the identical money, and declares it to have been her custom to keep about $1,500 in a bureau drawer, ready for use. While this was on hand— about three years—she had borrowed large sums, and executed mortgages against her property, which were still unpaid. Equally improbable is plaintiff's story of having found treasures in the Philippine Islands. He testified that, having noticed some natives digging near a bridge in the neighborhood of San Fernando, about thirty-five miles from Manila, he proceeded, after their departure, to probe the soil with a ramrod, and soon struck something, which turned out to be a can and a jar, about 15 inches beneath the surface, containing 4,000 Spanish silver dollars. He was able to keep the discovery from a companion who was on guard with him, and subsequently to carry the money in his haversack, in seven loads,

to bury beneath the bamboo floor in a bamboo house occupied by soldiers, and thereafter to convert it, by small amounts at a time, into gold, which he carried to Manila in his haversack, and then in his knapsack across the ocean and half the continent to his home. Though continually with others, yet this was accomplished without discovery or disclosure to a single human being. Surely such discretion in one scarcely twenty years old was somewhat remarkable. But this was not all. The identical money was kept for nearly three years in a chest in his father's home, and, but for Hobson's search for some one to whom he might sell his stock of goods in order to cheat his creditors, it might have been there still. Bureaus and chests as depositories for money have this advantage over banks: They keep no records. And the story, as a whole, may be said to defy contradiction, save by its inherent improbability, its inconsistency with surrounding circumstances, and the contradictory statements. That lost treasures have been found in the past is doubtless true, but when the account is so improbable as that here given, and is inconsistent with statements made outside of court, it may well be rejected. The suggestion of counsel that plaintiff, in saying that he had earned the money paid, did not discriminate between earning and finding, and, in declaring that he had not borrowed, treated the money of his mother as his own, after the manner of the elder brother of the prodigal son, to whom the father said, "Son, thou art ever with me, and all I have is thine," is charitable, but not in accord with the witness' explanation that he so stated to Lewis because he thought the information sought was none of his business. The circumstances of this entire transaction are unusual and out of harmony with the ordinary course of business. Even Hobson, to whom the plaintiff claims to have paid the money, returned shortly after the levy, with the story that he had lost all of it in Missouri. The tale has all the earmarks of a manufactured story, and might well have been rejected by the jury as unworthy of belief. *Gaar v. Stolt,* 115 Iowa, 139.

III.   Appellant complains of the court's refusal to instruct to the effect that the levy of the writ of attachment was invalid unless the jury should find that the attachment de-
3. ATTACHMENT: fendant, Fred Hobson, was in actual posses-
fraudulent
conveyances. sion of the property, or was entitled to the immediate possession thereof, at the time of the levy.   He insists that if plaintiff was in possession, even though in fraud of Hobson's creditors, the only way to attach was by garnishment.   The Code provides that "property of defendant in possession of another and of which the defendant is entitled to the immediate possession may be seized under attachment by taking possession thereof, in the same manner as though found in the defendant's possession."   Section 3896.   "Property of the defendant in the possession of another, or debt due the defendant, may be attached by garnishment as hereinafter provided."   Section 3897.   Evidently section 2967 of the Code of 1873 was separated into several sections in enacting that of 1897, and in doing so the limitation of the right to levy upon property in the possession of third parties was incorporated.   Doubtless the design was to obviate disturbing the possession of a third person, legally entitled thereto by virtue of some valid arrangement with the owner, and yet protect the creditor by subjecting the owner's interest therein to the payment of the debt.   Whether this must have been done under the statute as it formerly stood, we need not inquire.   If appellant's interpretation were to be accepted, property fraudulently transferred could not be seized by the sheriff, and the only remedy would be by garnishing the transferee, which might often result in merely obtaining another judgment for the value of the property, rather than satisfying the debt. Manifestly this was not the intention of the lawmakers.   True, the law will not aid the owner to recover the property he has fraudulently conveyed to another.   But if he obtains possession again in some way, such possession will be protected by the courts, without inquiring into the method resorted to in acquiring it.   The fraudulent vendee, then, is not entitled to possession as against the true owner.   The

right of the latter to the property continues, but will not be enforced, because of his wrong in fraudulently parting with possession. But his creditors who have not participated in the wrong may assert his title to the property, and his right to the immediate possession, for the purpose of satisfying their claims. As to them the fraudulent arrangement as to the vendee furnishes no defense, and what was intended by the statute is that any property may be seized under the writ to which attaching plaintiff may assert, as against the party in possession, the attachment defendant's right to immediate possession.

Other matters' discussed, relating to the issue of fraud, are disposed of by what has been said, and the special findings by the jury that the sale was fraudulent obviate any prejudice from errors assigned with respect to other issues.— AFFIRMED.