ADDIE IRENE CATLETT, a widow, *Plaintiff in Error*, vs. CHARLES H. CHESTNUT, as Executor of the Estate of B. S. Catlett, deceased, *Defendant in Error*.

146 So. 241.

Division B.

Opinion filed January 2, 1933.

Petition for rehearing denied February·10, 1933.

*Wm. M. Toomer, Charles A. Powers* and *George P. Garrett,* for Plaintiff in Error;

*Knight & Frazier* and *Knight, Adair, Cooper & Osborne,* for Defendant in Error.

DAVIS, J.—This is the second appearance of this case in this Court.

Upon its first appearance we reversed the judgment upon writ of error and remanded the issues made for a trial by jury according to law. See Catlett v. Chestnut, 100 Fla. 1146, 131 Sou. Rep. 120. The present writ of

error was taken from a directed verdict and final judgment rendered against plaintiff in error as petitioner in the case below when the case was tried there by jury pursuant to our previous mandate.

In the course of the trial the Circuit Judge was required by the pleadings and the evidence adduced to pass upon the validity of a divorce decree which plaintiff in the trial had obtained from her former husband. The defendant contended that the decree was void. This contention was predicated on the ground that no service of process had been legally effected, on one Charles Lenz who was named as defendant in the divorce proceeding. The trial judge sustained the defendant's objections, held that the divorce decree was void, and directed a verdict requiring the jury to find in favor of such defendant on the issue of the plaintiff's alleged subsequent common law marriage to Benjamin S. Catlett, whose widow plaintiff-petitioner pretended and asserted herself to be, in order to support her claim to dower in Catlett's estate.

At the outset we make reference to the fact that the mode in which the question of validity of the divorce decree was presented in this case in the court below, makes it necessary for us to determine as the real proposition to be decided, whether or not that divorce decree was subject to being held void in this case *on collateral attack.*

The general rule on the subject is that the record in support of a judicial decree may be grossly insufficient to show complete regularity of procedure, and yet be entirely sufficient to shield the decree from collateral attack. Van Fleet on Collateral Attack on Judicial Proceedings, Par. 1, Chapter 1, pages 1-3.

The petitioner (plaintiff), as part of her case in chief, introduced in evidence a certified copy of the decree of divorce, divorcing her from her husband, Charles Lenz,

whom she had previously testified had been married to her on July 4, 1922. She also testified that the Hillsborough County divorce proceedings had been brought by her, and were the only divorce proceedings she had ever instituted against her said husband, Charles Lenz. Charles Lenz himself appeared as a witness and corroborated petitioner's testimony in the foregoing particulars.

Upon that state of the record, the defendant thereupon offered in evidence a complete transcript of the divorce proceedings in the Hillsborough County Circuit Court upon which proceedings the petitioner's decree was based. The transcript so offered included all the papers filed, all the evidence, all the pleadings and all the record entries in that cause.

This transcript was offered by the defendant to show that the alleged decree of divorce relied upon by petitioner as evidence of a legal dissolution of the bonds of matrimony theretofore existing between petitioner and Charles Lenz, was null and void, and consequently that the Lenz marriage remained undissolved prior to and at the time petitioner claimed that she afterwards on February 2, 1927, contracted a common law marriage with Benjamin S. Catlett.*

There was an order of publication entered in the case, which order was made and published in the following form:

---

*The transcript showed that the bill of complaint had been sworn to and filed; that it alleged that the petitioner, then Addie Irene Lenz, was a resident of Hillsborough County; that she was married to defendant, Charles Lenz, on July 4, 1922; that she cohabited with defendant pursuant to such marriage; that defendant deserted her on July 5, 1922; that she was entitled to a divorce on the statutory ground of desertion for more than one year; that the defendant, Charles Lenz, was a non-resident of the State of Florida and that the address of the defendant was unknown to complainant; that defendant was over 21 years of age and that there was no person in the State of Florida the service of a subpoena upon whom would bind said defendant.

"IN THE CIRCUIT COURT, THIRTEENTH JUDI-
CIAL CIRCUIT, HILLSBOROUGH COUNTY, FLOR-
IDA. IN CHANCERY. #20265.
A. Lenz
   vs.
Charles Lenz

It appearing by a sworn bill in the above stated
cause that Charles Lenz, the defendant therein named,
is a non-resident of the State of Florida; that the ad-
dress of said defendant is unknown to complainant;
that there is no person in the State of Florida service
of a subpoena upon whom would bind said defendant,
and that said defendant is over the age of twenty-one
years; it is therefore ordered that said non-resident
defendant be and he is hereby required to appear to
the bill of complaint filed in said cause on or before
Monday the 3rd day of December, A. D. 1923, other-
wise the allegations of said bill will be taken as con-
fessed by said defendant.

It is further ordered that this order be published
once a week for eight consecutive weeks in the Free
Press, a newspaper published in said County and State.

Done and ordered in Tampa, Fla., this the 5th day
of October, A. D. 1923.

                    W. R. WATKINS,
SEAL                      Clerk Circuit Court.
               By Clara King, D. C.
DICKENSON & DIAZ,
      Solicitors for Complainant."

This order was filed October 5, 1923, but does not ap-
pear to have been recorded. While it appears to have
been duly published in the statutory manner and for the
statutory time, yet the affidavit of publication furnished
by the newspaper publisher was never attested by the
notary before whom it was sworn to, although signed by
the publisher with a recital that he had sworn to it.
Proper certificate of publication of the order of publica-
tion was made and filed by the Clerk. Decree pro con-
fesso for want of appearance, plea, answer or demurrer
having been entered by the Clerk and recorded, testi-

mony was taken before Circuit Judge L. L. Parks, who heard the case in person, and thereafter on January 7, 1924, rendered a final decree of divorce which was subsequently recorded on January 8,.1924.*

It appears beyond dispute, that Lenz was never personally served with process, that he never personally appeared, and that the allegations of the sworn bill of complaint, and recitals of the order of publication, are the sole basis for the · process by constructive service which was had against him.

This Court has consistently held that statutes authorizing constructive service of process by publication should be strictly and exactly pursued in order to give a court jurisdiction to render a decree by default against a party who does not appear or plead in the case, and that this principle has especial application to proceedings under constructive service in divorce cases. Shrader v. Shrader, 36 Fla. 502, 18 Sou. Rep. 672; Ortell v. Ortell, 91 Fla. 50, 107 Sou. Rep. 442; Thompson v. Thompson, 94 Fla. 1046, 115 Sou. Rep. 496. See also Balian v. Wekiva Ranch, 97 Fla. 180, 122 Sou. Rep. 559; Slaughter v. Abrams, 101 Fla. 1141, 133 Sou. Rep. 111; Mabson v. Mabson, 104 Fla. 162, 140 Sou. Rep. 801.

We have further held that in every case where constructive service is attempted, if there is a failure to pursue the *essential requirements* of the statute, the decree rendered upon such illegal constructive service is void as to parties who have not appeared or plead in the case. Shrader v. Shrader, *supra;* Beverette v. Graham, 101 Fla. 563, 132 Sou. Rep. 826. And such rule was restated and followed by this Court as late as the case of

---

*The final decree recited a finding by the Circuit Judge to the effect that "service.was had upon the defendant by publication, and a decree pro confesso taken against him."

Mabson v. Mabson, 104 Fla. 162, 140 Sou. Rep. 801, decided February 2, 1932.

But the proposition we are now called on to decide on this writ of error is, when a sworn bill of complaint (or affidavit) for constructive service, has been made and filed in such form that while it *tends to show* every material jurisdictional fact required by the statute to be set up to authorize an order of publication for constructive service, it fails to do so in the· precise statutory language, whether or not the resultant constructive service had, can be deemed sufficient to shield the validity of the final decree in such a case, where that decree is attacked collaterally, and not directly.

The weight of authority is to the effect that if an affidavit for constructive service is defective but nevertheless tends to show each material statutory fact necessary to be shown to make valid constructive service, and there is not an entire omission to state any required material fact, but such material fact is only inferentially or insufficiently set forth, the proceedings upon such defective affidavit are merely voidable, not void, and are not subject to being struck down upon collateral attack. Van Fleet on Collateral Attack on Judicial Proceedings, pages 318-319; Harris v. Claflin, 36 Kan. 543, 13 Pac. 830; Pettiford v. Zoellner, 45 Mich. 358, 8 N. W. 57; Atkins v. Atkins, 9 Neb. 191, 2 N. W. 466; Holmes v. Holmes, 15 Neb. 615, 19 N. W. 600; Welles v. Thornton, 45 Barb. (N. Y.) 390; Forbes v. Hyde, 31 Cal. 342; In re: Faulkner, 4 Hill (N. Y.) 598, text p. 602.

An examination of the sworn bill of complaint upon which the challenged order for constructive service was made, reveals the fact that by it the defendant, Lenz, was alleged to be a non-resident of the State of Florida, and that his "address" was unknown, whereas the stat-

ute* requires that the sworn bill (or affidavit) show that it is the affiant's belief that the defendant's "residence" not his "address" is unknown.

It was contended by the defendant in error, as defendant in the Court below, and is contended here, that where the complainant in a chancery case seeks constructive process under a particular portion of a particular statute, that he must bring himself clearly within the particular portion of the particular statute which he invokes, otherwise the decree will be utterly void under the authority of Shrader v. Shrader, *supra,* and Ortell v. Ortell, 91 Fla. 50, 107 Sou. Rep. 442, and Slaughter v. Abrams, 101 Fla. 1141, 133 Sou. Rep. 111.

In reply to such argument, plaintiff in error, who was petitioner below, contends in support of the validity of the challenged decree as against a collateral attack, that to aver that one is a non-resident and that his "address" is unknown, is tantamount in legal effect to using the statutory language under which it was required that it be averred that the defendant was a non-resident and that his "residence" was unknown.

In Ortell v. Ortell, 91 Fla. 50, 107 Sou. Rep. 442, it was said that it is not necessary that the affidavit shall follow the exact language of the statute where it sets up such facts as show a compliance with what the statute requires. And in Taylor v. Taylor, 64 Fla. 521, 60 Sou. Rep. 116, it was held that although the statute in terms

---

*The statute under which the order was made reads in part as follows: "4895. (3111) *Constructive Service, Obtaining Order for Publication.* Whenever the complainant, his agent or attorney, shall state in a sworn bill or affidavit, duly filed, the belief of the affiant that the defendant is a resident of a State or Country other than this State, specifying as particularly as may be known to affiant such residence, or that his *residence* is unknown, . . . . . and that there is no person in the State of Florida, the service of a subpoena upon whom would bind such defendant . . . . . and further states the belief of affiant as to the age of defendant being over or under twenty-one years, the judge or clerk of the Court in which the bill shall have been filed shall make an order against the defendant requiring him to appear," etc. Section 4895 C. G. L., 3111 R. G. S.

requires it as a general proposition in all ordinary cases, that it was not necessary in a divorce case in which the defendant was averred to be a non-resident, to allege or state in the affidavit that there was no person in the State upon whom service of process could be made that would bind the defendant.* In Shrader v. Shrader, *supra*, it was held that it was a departure from the "essential requirements" of the constructive service statute and not a slight or inconsequential departure *per se*, which rendered the attempted constructive service void.

But in this case it is not necessary for us to pass upon what may be the validity of the substitution of the word "address" in the place of the word "residence" in a case in which the sufficiency of the constructive service attempted as a result of such substituted language is directly, and not collaterally attacked.

Respectable judicial authority has been found (San Diego Savings Bank v. Goodsell, 137 Cal. 420, 70 Pac. 299) which holds that the words "address" and "residence" as used in a constructive service statute may be treated as interchangeable in legal meaning. While we are not inclined at this time to definitely hold with such authority that such a substitution of terms can be sustained in cases where the attempted constructive service is *directly* attacked for non-conformity to the essential requirements of the statute, we are convinced that the mere employment of the word "address" for the word "residence" in a sworn bill of complaint seeking an order for constructive service upon the stated statutory ground that the "residence" of the defendant is unknown, should be regarded as sufficient in legal effect to

---

*This was on the theory that service in a divorce case could not be made on someone else in order to bind the defendant, and that therefore an averment of such a self evident fact was wholly non-essential.

shield the resultant decree from being declared void on collateral attack.

Some weight must always be given to the findings of a court of general jurisdiction, such as that of our Circuit Courts in Chancery, holding that they have acquired jurisdiction by proper legal constructive service. In collateral proceedings, jurisdiction of courts of general jurisdiction will, if possible, be presumed until the contrary appears. Providence County Savings Bank v. Hughes, 26 R. I. 73, 58 Atl. 254, 106 A. S. R. 682. And findings of jurisdiction based upon constructive service will always be upheld on collateral attack, where the judicial action in upholding the purported service, when viewed collaterally, presents such a question of jurisdiction acquired by constructive service, that the question of jurisdiction may be fairly regarded as debatable or colorable in the particular case. See Van Fleet on Collateral Attack, Chapter 1, supra.* .

Thus it has been held that where a decree of divorce is attacked collaterally, only jurisdictional errors will be considered, and where in such a case, it appears that there was a sworn bill of complaint or affidavit for constructive service which was not in the literal language of the statute but contained other language which tended to make out the jurisdictional allegations required to be shown as the basis for an order of publication, it will be regarded as sufficient as against collateral attack, whether otherwise to be upheld or not. Pettiford v. Zoellner, 45

---

*In· this case such a debatable question is presented because even some of the Justices of this Court differ in their views as to the legal sufficiency of the employment of the word "address" as a substitute for the word "residence" in an affidavit for constructive service based on the ground of alleged unknown "residence." In such debatable cases the Court whose jurisdiction is attacked is deemed to have acquired sufficient jurisdiction to decide the sufficiency of the constructive service affidavit that was actually made, to protect its decrees based thereon from being set aside on collateral attack.

Mich. 358, 8 N. W. 57; Forbes v. Hyde, 31 Cal. 342; Harris v. Claflin, 36 Kan. 543, 13 Pac. 830.

In the divorce proceeding which we are now considering, there was a compliance with the statutory form of affidavit in every particular except that it was averred that the defendant's "address" was unknown and not that his "residence" was unknown. The words "address" and "residence" as used in these statutes, are so nearly synonymous that legal minds may reasonably differ in their conclusions as to their exact correspondence to each other in legal signification. Such difference of opinion exists in this Court among the Justices, and as has been pointed out, the Supreme Court of California has held that they are of equal and equivalent legal meaning.

The Circuit Judge of Hillsborough County, in considering the case of A. Lenz v. Charles Lenz on final hearing, was required to determine at that time time whether he had jurisdiction based on constructive service sufficient to sustain rendition of a decree of divorce. He determined that question of jurisdiction in favor of the sufficiency of the sworn bill praying for constructive service, and followed that finding by entering the decree prayed for, in which decree he recited in trems a finding in favor of his own jurisdiction to act in that particular case.

There was no entire omission to aver a jurisdictional fact. The objection is that there was an insufficient averment of the jurisdictional fact that defendant's "residence" was unknown. There was, however, an inferential, though possibly an insufficiently direct averment or setting forth of that fact, by averring in lieu of the statutory language as to "residence," that the defendant's "address" was unknown.

The sworn bill being in form sufficient to present some substantial allegation, and therefore some evidence tend-

ing to prove the statutory fact that the "residence" of the defendant was unknown, was sufficient to give the Circuit Court of Hillsborough County jurisdiction to accept the informal allegation thus made, as being the equivalent of an averment in the language of the statute, and while possibly that ruling was erroneous and would have warranted the reversal of the divorce decree on appeal, the allegation so accepted by the Circuit Court was not so fatally defective on collateral attack as to render the decree of divorce based thereon utterly void as for a total omission to aver a material jurisdictional fact. The fact that defendant's "residence" was unknown, while not adequately alleged, was not wholly omitted from attempted averment, though the averment was not in the language required by the statute.

A due consideration of the title to numerous estates, the validity of long established marriages, the legitimacy of countless children, the peace of many families and the painful consequences which would necessarily ensue should we fail to give effect to the above stated rule as to collateral attacks on the validity of decrees in equity cases, where there has been employed an inferential or imperfect allegation of a jurisdictional fact in an affidavit for constructive service, as distinguished from a complete failure to allege at all a required jurisdictional fact, impels us to hold in the case at bar that the divorce decree in the case of A. Lenz v. Charles Lenz was not subject to being collaterally attacked and declared void for the reasons advanced and sustained by the trial judge in the Court below as hereinbefore discussed by us. And upon that consideration we must consequently hold that there was reversible error committed by the trial Judge on that point, for which a new trial should be awarded.

Both parties moved for a directed verdict on the evi-

dence. The contention is advanced that in cases where both parties have moved for a directed verdict, the Court is warranted in finding the facts and in directing a verdict in accordance with that finding. Gibson v. Allen-West Commission Co., 138 Ark. 172, 211 S. W. 142; St. Louis S. W. Ry. v. Mulkey, 100 Ark. 71, 139 S. W. 643; O'Brien v. Galley Stockton Shoe Co., 65 Colo. 70; 173 Pac. 544; First National Bank v. Hayes, 64 Ohio State 100, 59 N. E. 893; Krauss Bros. Lbr. Co. v. Mellon, 30 Fed. (2nd) 901; Fourth National Bank of Montgomery v. Portsmouth Cotton Oil Co., 284 Fed. 718; Holbrook v. Shepard, 279 Fed. 193; La Crosse Plough Co. v. Pagenstecher, 253 Fed. 46; Williams v. Vreeland, 244 Fed. 346, same case 250 U. S. 295, 39 Sup. Ct. Rep. 438, 63 L. Ed. 989; Sena v. American Turquoise Co., 220 U. S. 497, 31 Sup. Ct. Rep. 488, 55 L. Ed. 559.

Our view of that question is that a motion by each party for a directed verdict, without more, does not waive a jury and authorize the Court to decide a controverted question of fact, as a matter of law, or render a general verdict on the facts, as a matter of law, where otherwise the case would be for the jury  See Manska v. San Benito Land Co., 191 Iowa 1284, 184 N. W. 345, and the many cases cited therein. See also the reasoning employed in Wolf v. Printing Co., 233 Ill. 501, 84 N. E. 614, where the Supreme Court of Illinois said:

" 'To say that a request to the court to decide a pure question of law clothes the Court with power to decide controverted questions of fact, would be both illogical and inconsistent with the nature of the motion. * * * When one party asks the Court to direct a verdict in his favor, the fact that the other party makes a similar motion, cannot in any way affect the rights of the first party.' "

Plaintiff in error contends that the Court below committed reversible error in not directing a verdict on the

evidence in her favor on the issue of her alleged marriage to Benjamin S. Catlett.

Much of the evidence offered in plaintiff in error's behalf, while uncontroverted, appears to be discredited in many particulars. Such evidence is not necessarily binding upon a court in the consideration of a motion for a directed verdict. Testimony may be unimpeached by any direct evidence to the contrary, and yet be so contrary to natural laws, inherently improbable or unreasonable, opposed to common knowledge, inconsistent with other circumstances established in evidence or so contradictory within itself, as to be subject to rejection by the Court or jury as a trier of the facts. Brannen v. State, 94 Fla. 656, 114 Sou. Rep. 429. While the testimony of an unimpeached witness is not to be arbitrarily disregarded, and must be measured by the standard of common experience in human conduct or business usage, there may be such an inherent improbability in the statements of a witness as to induce the Court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. A witness may be contradicted by the facts he states as completely as by direct adverse testimony. There may be likewise so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. Howell v. Blackburn, 100 Fla. 114, 129 Sou. Rep. 341; Quock Ling v. U. S., 140 U. S. 417, 11 Sup. Ct. 733, 851, 35 L. Ed. 501; Jordan v. Crickett, 123 Iowa 576, 99 N. W. 163.

In this case the nature of petitioner's proofs was not such that the Court would have been justified in taking the case away from the jury by directing a verdict in plaintiff in error's favor. The most that can be said in this respect is that petitioner by her evidence made a case sufficient to go to the jury there to be passed on

as to the weight of the evidence and the credibility of the witnesses.

As the case must go back for a new trial, we deem it appropriate say that with respect to the issue of common law marriage presented, that we approve the rule which enunciates the principle that the only difference between a formal marriage under license, and a common law marriage, is in the method of expressing consent. Where cohabitation and repute are relied on to show such a marriage, the cohabitation must be professedly as husband and wife, and public, so that by their conduct with each other, the parties may be known as husband and wife. But in every case something more than a secret or undisclosed private agreement between the parties must be shown to establish a common law marriage, because the State is a party to every such agreement and it must necessarily be of a public nature. See Schouler on Marriage, Divorce, Separation and Domestic Relations, Vol. 2, page 1435, for a discussion of this subject. See also Grigsby v. Reib, 105 Texas 597, 153 S. W. 1124, L. R. A. 1915E, page 1; Hutchins v. Kimmell, 31 Mich. 126, 18 Am. Rep. 164; Robinson v. Robinson, 188 Ill. 371, 58 N. E. 906; State of Maryland for the use of Markley v. Baldwin, 112 U. S. 490, 5 Sup. Ct. Rep. 278, 28 L. Ed. 822

Where two parties, both competent to enter into a marriage status, consummate a common law marriage, they are just as effectually married to one another as if they had been married pursuant to a marriage license and a marriage ceremony conducted by a minister or authorized civil officer officiating in the presence of a throng of witnesses. The leading cases on the subject of common law marriages in Florida are: Marsicano v. Marsicano, 79 Fla. 278, 84 Sou. Rep. 156; Chaves v. Chaves, 79 Fla. 602, 84 Sou. Rep. 672; Caras v. Hendrix, 62 Fla. 446, 57

Sou. Rep. 345; LeBlanc v. Yawn, 99 Fla. 328, 126 Sou. Rep. 789. See also Daniel v. Sams, 17 Fla. 487; Warren v. Warren, 66 Fla. 138, 63 Sou. Rep. 726; Green v. Green, 77 Fla. 101, 80 Sou. Rep. 739; Madison v. Robinson, 95 Fla. 321, 116 Sou. Rep. 31.

Whether or not testimony in this case as to the alleged marriage on February 2, 1927, by express agreement *per verba de praesenti*, coupled with the acts of the parties which are alleged to have followed it, including the purported circumstances of alleged subsequent cohabitation and conception of a child, and open reference by Catlett to petitioner as his wife to the attending physician who was called to treat her at her miscarriage, was a sufficient public recognition of the marital status to sustain the finding of a common law marriage in fact, is a question for the jury to decide under proper instructions. If the marriage status ever once comes into existence, it remains in full force thereafter until it is dissolved by law or death of one of the parties. Subsequent acts of concealment or maintenance of secrecy concerning the relationship between the parties is not sufficient to destroy a marital status after it has once been assumed in contemplation of law.

We are now brought to a consideration of the only other point in the case which we deem worthy of special discussion.

Section 4372 C. G. L., 2705 R. G. S., reads as follows:

"No person, in any court, or before any officer acting judicially, shall be excluded from testifying as a witness by reason of his interest in the event of the action or proceeding, or because he is a party thereto: Provided, however, that no party to such action or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party, or interested person derives any interest or title, by assignment or otherwise, shall be

examined as a witness in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic, against the executor, or administrator, heir-at-law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or the assignee or committee of such insane person or lunatic; but this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee, survivor or committeeman shall be examined on his own behalf, or as to which the testimony of such deceased person or lunatic shall be given in evidence.''

When the competency of a witness is objected to under the proviso of this statute, on the ground that the witness is disqualified because of interest in the result of the suit, the true test of his competency is by resort to the common law. If the witness was competent at common law he is competent under the proviso to this statute, and vice versa. Adams v. Board of Trustees of I. I. Fund, 37 Fla. text 289, 20 Sou. Rep. 266. The object of the statute was to enlarge, not restrict the competency of the parties to litigation as witnesses, and in itself, created no new disabilities, but merely retained, in case of a deceased or insane party, the common law disqualification of his adversary to be a witness to ''any transaction or communication'' had with him. Munroe v. Carroll, 80 Fla. 206, 86 Sou. Rep. 193.

That Addie Irene Catlett is an interested party is obvious, because if she obtains a judgment in this case by reason of establishing the common law marriage she is claiming under, she will gain considerable in money and property. That an alleged common law marriage with a deceased person is a *transaction* within the meaning of this statute was declared in Madison v. Robinson, 95 Fla. 321, 116 Sou. Rep. 31.

Conceding for the sake of argument but not deciding the proposition to be sound that under the rule *"ex necessitate rei"* which constituted a well recognized exception to the common law rule of disqualification of interested witnesses (1 Greenleaf on Evidence, 15th Ed. Section 348; 12 Encyclopedia Evidence, page 1004) a party to an alleged marriage *per verba de praesenti* may be permitted to testify to the fact of a mutual agreement and consent to marry necessary to make out such a marriage in cases where there would be no other means of proving it, this is not such a case. Here the petitioner claimed to have had a witness to the marriage agreement and that witness was produced and testified in the case. No reason for applying the rule *"ex necessitate rei"* was therefore made to appear and petitioner's testimony as to her "transaction" of marriage with the deceased Catlett was properly ruled out by the trial judge.

Section 4369 C. G. L., 2702 R. G. S., providing that in civil actions neither the husband nor the wife shall be excluded from testifying, where either is an interested party, has no application to the case at bar which involves the very issue of marriage *vel non*.

The question of whether the bar of the statute has been lifted may not again come into the case on another trial, so we express no opinion on it at this time, as a determination of such question must depend upon the circumstances appearing at the time the objection is required to be ruled on.

The judgment is reversed and the cause remanded with directions to award a new trial and have such further proceedings as may be according to law.

Reversed and remanded.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS, J., concur in the opinion and judgment.

BROWN, J. (Dissenting).—I think the conclusion reached by the court below, that the divorce decree was void, is correct, not only because of the defect in the affidavit and order of publication but for other reasons disclosed by the transcript of the record in the divorce proceeding. However, as these questions have been fully argued and considered by the Court, I deem it unnecessary to write an opinion setting forth the reasons which lead me to a conclusion differing from that of my associates on this branch of the case, and which conclusion would, if correct, call for an affirmance of the judgment below.

## ON PETITION FOR A REHEARING.

PER CURIAM.—It is true, as defendant in error's petition for rehearing suggests, that an apellate court should not reverse a proper ruling of a *nisi prius* court *solely* because an erroneous opinion or reason for making the ruling was given. But this legal precept does not apply to cases where, though the same result or general conclusion might have been otherwise properly reached as was reached, it plainly appears that the court below did not confine its consideration of the merits of the case to those legal factors, or evidentiary facts only which the law of the case requires to be considered as a basis for the ruling made. See Barry v. Walker, 103 Fla. 533, 137 Sou. Rep. 711, and cases cited; McEwen v. Schenck, as Receiver, decided at this term of Court, opinion filed January 18, 1933, 146 So. 839.

In this case the Court below held the Hillsborough County divorce decree void. This ruling we have heretofore decided was erroneous. Had it been correct, that ruling alone would have made unavoidable, as well as would have sustained, the Court's ruling directing a verdict against the party who was proceeding at the trial on the basis of the rejected divorce decree's validity.

Petitioner below (plaintiff in error here) was entitled to have the legal sufficiency of the entire evidence ruled on as against a motion for a directed verdict, on the basis of the disputed divorce decree's being held to be valid. There is nothing in the record in this case to show that, had the court below in the first instance, held the decree valid, he would nevertheless have directed a verdict against petitioner below, conceding *arguendo* that if the judge had done so, this Court would have upheld such a ruling on the whole evidence.

With the exception of the limited comment made by us concerning the disposition of petitioner's motion for a directed verdict on the issue of her alleged marriage to Benjamin S. Catlett, the overruling of which we held was not error, no conclusion was expressed in our original opinion, and none is expressed now, concerning the propriety of directing a verdict for or against either party in this case, on the whole record as it stood at the conclusion of all the testimony and evidence for both parties at the trial. That proposition cannot properly be decided by this court until after the court below has considered and ruled on the case in the light of those applicable legal principles which this court has held to be controlling with respect to steps in the trial.

Rehearing denied.

DAVIS, C.J., AND WHITFIELD, TERRELL AND BUFORD, J.J., concur.