## ADDIE IRENE CATLETT v. CHARLES H. CHESTNUT, as Executor of B. S. Catlett, deceased.

158 So. 419.

Opinion Filed December 6, 1934.

Rehearing Denied January 3, 1935.

*W. M. Toomer, Charles M. Durrance, George P. Garrett, Charles A. Powers* and *Charles A. Powers, Jr.,* for Plaintiff in Error;

*C. T. Rankin, Albion W. Knight, Henry P. Adair, John M. McNatt* and *Knight, Adair, Cooper & Ocborne,* for Defendant in Error.

WHITFIELD, J.—It is apparent from the whole record that, in view of the circumstances of the asserted common law marriage and of the undisputed evidence as to the conduct and transactions of the parties thereafter, the jury in rendering the verdict and the trial judge in denying a new trial and in rendering judgment, did not believe a common law marriage had been consummated. The evidence is legally sufficient to sustain the verdict and judgment and no errors affecting the result indicated are made to appear.

Affirmed.

DAVIS, C. J., and TERRELL and BROWN, J. J., concur.

ELLIS and BUFORD, J. J., dissent.

BUFORD, J. (dissenting).—This is the third time this case has appeared in the Supreme Court of Florida. See Catlett v. Chestnut, 100 Fla. 1146, 131 Sou. 120; Catlett v. Chestnut, 107 Fla. 498, 146 Sou. 241. It is now before us on a writ of error to a judgment in favor of Charles H. Chestnut as Executor of the estate of B. S. Catlett, deceased, and against Addie Irene Catlett, who came into the suit as the widow of B. S. Catlett, deceased.

The sole question involved in the case is whether or not Addie Irene Catlett was the wife of B. S. Catlett at the time of his death and thereupon became his widow. It is unnecessary for us to write any extended opinion dealing with the law as enunciated in various courts in connection with this case. As is seen from the opinions heretofore filed, Addie Irene Catlett claimed to be the common law wife of B. S. Catlett, deceased. The law of the case is established in the former opinions filed in this Court.

In Catlett v. Chestnut, 107 Fla. 498, 146 Sou. 241, this Court, speaking through Mr. Justice DAVIS, said:

"Where two parties, both competent to enter into a marriage status, consummate a common law marriage, they are just as effectually married to one another as if they had been married pursuant to a marriage license and a marriage ceremony conducted by a minister or authorized civil officer officiating in the presence of a throng of witnesses. The leading cases on the subject of common law marriages in Florida are: Marsicano v. Marsicano, 79 Fla. 278, 84. Sou. Rep. 156; Cheves v. Cheves, 79 Fla. 602, 84 Sou. Rep. 672; Cares v. Hendrix, 62 Fla. 446, 57 Sou. Rep. 345; Le-Blanc v. Yawn, 99 Fla. 328, 126 Sou. Rep. 789. See also Daniel v. Sams, 17 Fla. 487; Warren v. Warren, 66 Fla. 138, 63 Sou. Rep. 726; Green v. Green, 77 Fla. 101, 80 Sou.

Rep. 739; Madison v. Robinson, 95 Fla. 321, 116 Sou. Rep. 31."

And further, in the same opinion, Justice DAVIS said:

"If the marriage status ever comes into existence, it remains in full force thereafter until it is dissolved by law or death of one of the parties. Subsequent acts of concealment or maintenance of secrecy concerning the relationship between the parties is not sufficient to destroy a marital status after it has once been assumed in contemplation of law."

It is not necessary for us to go further than to state the rule as enunciated in the last quoted statement in connection with the record in this case. The positive and uncontradicted evidence is that B. S. Catlett and Addie Irene Hafer on the 2nd day of February, 1927, by express contract entered into in the presence of a witness, took one another for husband and wife; that immediately after their agreement to then and there become husband and wife they went to the home of Mrs. Catlett's sister, Mrs. Dunn, and there, in the hearing of Mrs. Blake, who witnessed the marriage, Mr. Catlett announced to Mrs. Dunn, "Addie and I are married and I am the happiest man alive." They had dinner together with the Dunn family on that evening and that meal was considered by all present the weding supper. Mr. Catlett remained at the Dunn home and he and Mrs. Catlett occupied a room there that night as husband and wife. By this testimony the existence of the marriage relation is established. After that Mr. Catlett informed Dr. W. H. Hafer, brother of Mrs. Catlett, that he was married to Mrs. Catlett, if this be of any value as testimony. Later he introduced Mr. Edward V. F. Brough in his (Mr. Catlett's) home to Addie Irene Catlett as his wife. Later he called Dr. W. M. Odom of Brunswick, Georgia, to deliver

a child from Mrs. Catlett and presented her to the doctor as his wife.

The record shows that the conduct of Mr. Catlett and of Mrs. Catlett was inconsistent with the marriage relation, but inconsistent conduct cannot destroy the marriage relation when, once it has come into being. Mr. Catlett at different times represented himself as a single man. Such representations could not destroy the legal effect of his marriage. Mrs. Catlett also at times represented herself as a single woman, but her conduct in this regard could not destroy the effect of the marriage which had been consummated.

The record shows that there was an agreement between the parties, for some cause best known to themselves, to keep their marriage a secret and so it was that when Mr. Catlett died it was not generally known that Addie Irene was his wife. There were many people who did not know it, but, as was said by Mr. Justice DAVIS in the opinion above referred to, "Where two parties, both competent to enter into a marriage status, consummate a common law marriage, they are just as effectually married to one another as if they had been married pursuant to a marriage license and a marriage ceremony conducted by a minister or authorized civil officer officiating in the presence of a throng of witnesses." There is no challenge in this record of the competency of either party. That the marriage status came into existence is sought to be disproved by circumstantial evidence concerning the conduct of the parties to that marriage.

The probative force and weight of the circumstantial evidence offered to disprove the existence of the marriage status is entirely inadequate to overcome the direct testimony of the consummation of the marriage. That testi-

mony as to subsequent circumstances was only properly admissible in this case for the purpose of showing that as a matter of fact Mr. Catlett and Miss Hafer did not enter into the marriage contract in the presence of Mrs. Blake and that Mr. Catlett did not immediately thereafter introduce Mrs. Catlett to other persons as his wife and in the presence of witnesses state that he was married to her and that he did not on the night after he had entered into the marriage contract with her cohabit with her as his wife by sleeping in the same bed with her in the house of her sister, after having partaken of a wedding supper, a part of which he furnished, in that home on that evening. The circumstances entirely fail to overcome the evidence of the existence of these facts.

The case should be reversed and the cause remanded for a new trial.

ELLIS, J., concurs.

## ON PETITION FOR REHEARING.

PER CURIAM.—The jury had before it circumstances that were regarded by the jury as sufficient to demonstrate the inherent improbability of petitioner's claim of a common law marriage on February 2, 1927, and in addition thereto there was shown in evidence other strong circumstances of a nature and tendency legally sufficient to warrant an inference by the jury that the direct testimony of petitioner's alleged witness to her asserted common law marriage was thereby so impeached as to render the testimony of plaintiff's witnesses unworthy of credence. The evidence of petitioner was no doubt sufficient in and by itself to warrant a verdict in her favor had the jury accepted it as true. But on the other hand, there was ample evidence consisting of facts and circumstances of what occurred before and after

the alleged common law marriage, that afford legal support for the jury's verdict finding that the petitioner never was married to B. S. Catlett by a common law or any other kind of marriage, as claimed by her and corroborated by her witnesses, Mrs. Dunn and Mrs. Blake.

Sections 4406-4407 C. G. L., 2734-2735 R. G. S., providing for discovery from the parties to a cause on propounded interrogatories and oral examinations by the opposite party before trial, are in *pari materia* with Section 4372 C. G. L., 2705 R. G. S., relating to the competency of witnesses as affected by interest. The bar of the common law that disqualified, a witness on account of his interest in the result of a cause is preserved in part by Section 4372 C. G. L., *supra*. It is not lifted by a mere invocation of the procedure authorized by Sections 4406 to 4407 C. G. L., *supra,* on behalf of an executor, administrator, heir at law, next of kin, assignee, legatee, devisee, survivor or committeeman unless the answers taken on the interrogatories are offered in evidence in the case against the party disqualified.

Rehearing denied.

Davis, C. J., and Whitfield, Terrell and Brown, J. J., concur.

Ellis and Buford, J. J., dissent.