## ZEMMICK, ESTATE OF, IN RE:

### ZEMMICK, Exceptor-Appellant, v ZEMMICK, ADMX., Defendant-Appellee.

Ohio Appeals, Seventh District, Belmont County.

No. 806.   Decided June 5th, 1946.

Kenneth G. Cooper, Bellaire, and Eugene M. Prager, of Wheeling, W. Va., for exceptor-appellant.

Edmund L. Matz and John P. Cinque, both of Bellaire, for defendant-appellee.

## OPINION

By PHILLIPS, J.

Appellant, who claimed to be the legal surviving spouse of decedent, by virtue of an undisputed ceremonial marriage performed in Wellsburg, West Virginia, on August 12, 1940, appealed to this court on questions of law and fact from a decision of the probate court dismissing her exceptions to the inventory filed in decedent's estate by appellee, the duly appointed, qualified and acting administratrix of his estate, and his claimed common law wife, by reason of such an alleged marriage entered into in Avella, Pennsylvania, in 1928; and the decision of the same court rendered in a hearing on her petition to remove appellee as administratrix on the urged ground that she was not decedent's surviving spouse and not entitled to administer his estate, or to a setoff of property to her as exempt and to a year's allowance as decedent's surviving spouse; and the holding of that court that her common law marriage to decedent was valid and appellant's ceremonial marriage with him was void.

Counsel for appellant conceded during oral argument that the case was not properly appealed as one on questions of law and fact, and it appearing that a bill of exceptions was duly filed the words "and fact" were ordered stricken from appellant's notice of appeal and the appeal was argued and will be retained and determined as one on questions of law

In his assigned grounds of error counsel for appellant claims that the trial judge erred to appellant's prejudice in finding that appellee was decedent's surviving spouse by virtue of their common law marriage; in declaring her marriage void and holding that she was not entitled to share in his estate as

his surviving spouse; in refusing to revoke appellee's appointment as administratrix of decedent's estate; in overruling her motions for a new trial; and contends that the "judgments" of the trial court are against the manifest weight of the evidence.

Plaintiff testified that on October 17, 1928, at the age of fourteen years she accepted the proposal of marriage made in Avella, Pennsylvania, by decedent, then sixteen years old; that thereupon he handed her a fictitious marriage license on which it appeared their names had been substituted for others, kissed her and put a ring on her finger, which she has worn "ever since." Her testimony and that of other witnesses, all of which is undisputed, is that she and decedent then started to live together as husband and wife in her parent's home situated in that city; subsequently went to housekeeping in the same city, and thereafter continued to live together as husband and wife in two other cities in the states of Pennsylvania and Ohio respectively and lived as such until the time of decedent's death in 1944, sixteen years later, with the exception, as she testified, that at times after 1940 up to the date of his death he lived with her on "week ends" only and but partially supported her.

Appellant testified that decedent ordinarily did not spend week-ends with her during the year she lived with him in Charleroi, Pennsylvania; and the uncontradicted testimony of appellee and various other witnesses is that at all of the times and in all of the places mentioned herein she and decedent held themselves out as and were there commonly known and generally referred to as husband and wife.

There is evidence that decedent filed an action for divorce against appellant in Wheeling, West Virginia, which was never heard; and documentary evidence that decedent considered appellee his wife. Such evidence consisted of a war bond purchased by decedent payable either to him or appellee as his wife, and an application for a loan filed with an Ohio Loan Company in which appellee was named as decedent's wife, and other such evidence unnecessary to cite herein.

The stenographer who reported the testimony of appellee in "an examination or investigation before the Industrial Commission" of Ohio, where appellee sought compensation for decedent's death, testified from her shorthand notes taken in that proceedings that appellee testified inter alia that her name was Sarah Darn, "but she went by the name of Zemick"; that she was not married, never was married, and knew she was not married to decedent; that she told a friend "I weren't

married, but was living with him"; that they discussed marriage and intended to get married but never were married; that nothing was ever said by either of them about taking each other as husband and wife; that she "never felt in her own mind that a contract of marriage existed" between decedent and her, and knew each was free to marry another person; that she thought "when you lived with a man so long they (sic) were man and wife, that some people said it was seven years, but she did not know"; "that decedent put her ring on her finger after he gave her the fictitious marriage certificate, and told her to wear it that they might be married some day; that decedent told her he was going to secure a divorce from appellant and asked her if she would marry him after he was divorced.

"Marriage without ceremony is commonly called a common law marriage." Restatement on Conflict of Laws, Section 123.

In the case of Catlett v Chestnut, 107 Fla. 498, 146 So. 241, 91 American Law Reports 213, the court makes a simple distinction between a formal and common law marriage in that state in these words:

"The only difference between common-law marriage and formal marriage under license is in method of expressing consent."

The courts of other states, including Pennsylvania, have spoken upon the subject by saying:

"Common law marriage requires an assumption of the parties of the rights and duties of the marital relationship in order to establish the existence and reality of the alleged consent thereto. That is to say there must be cohabitation of the parties, matrimonial in nature, professed and open such as will create some public recognition that their intentions were matrimonial. In re: Callery's Estate, 226 Pa. 469, 75 A. 672." In re: Zemmick's Estate, 17 Ohio Supp. 15, written by the probate judge whose decision we are reviewing.

"The consent of parties must be unequivocally evidenced, but it may be evidenced in any form or manner and verbally or by conduct alone and no particular form of expression is necessary. In re: Craig's Estate, 273 Pa. 530, 117 A. 221; Com. v Stump, 53 Pa. 132, 91 Am. Dec. 198; In re: Hines' Estate, 7

Pa. Dist. 89; Philadelphia Guardians of the Poor v Nathans, 2 Brewst., Pa., 149; Hantz v Sealy, 6 Bin., Pa., 405." In re: Zemmick's Estate, supra.

The parties must intend in good faith to live together in the relation of husband and wife and that the union shall be permanent and exclusive of all others. See In re: Callery, 266 Pa. 469, 75 A. 672.

The absence of mutual consent renders the relations of parties meretricious, but where there is consent the law will create the marriage status regardless of what the parties believe to be the effect of their agreement. See Richard v Brehm, 73 Pa. 140; Wandall's Estate, 29 Pa. Dist. 1132.

While it has not been raised we deem it advisable to dispose of the question of the ability of appellee and decedent to enter into a common law marriage.

"At common law, a marriage of one under the age of seven is absolutely void and a nullity, and the marriage of one over the age of seven, but under the age of consent, which is fourteen for a male and twelve for a female, is voidable. Also, under statutes fixing the age of consent, the general rule is that a marriage by one under that age, but over the age of seven, is not void but only voidable, in the absence of any provision expressly declaring that it shall be absolutely void, and statutes using the word 'void' have sometimes been construed to mean 'voidable'. Frequently, under statutory provision, a marriage of one of nonage is valid for all civil purposes until annulled by a judicial decree." 35 American Jurisprudence, Section 103, Page 245.

In the instant case the common law marriage between appellee and decedent, if entered into and consummated by the parties thereto at all, was entered into and consummated by them in the state of Pennsylvania, and such relationship if it existed between the parties in that state at all existed until they moved from Pennsylvania to Ohio in 1940, and continued to exist between them thereafter in the latter state if it existed there at all until decedent's death in 1944, when he was approximately thirty-four years of age and appellee was thirty-two years old. If a common law marriage existed between the parties prior to the parties reaching their majority they ratified such agreement upon reaching such age.

"A new affirmative agreement consciously entered into upon arriving at the age of consent is not necessary in order to validate a marriage; it may be ratified and validated by

cohabitation as husband and wife after arriving at the age of consent. It has been held that the parties may ratify by voluntary cohabitation a marriage absolutely void because it was contracted while they were under the age of consent." 35 American Jurisprudence, Section 106, Page 247.

It is apparent from the evidence and authorities cited that the contracting parties were legally and physically capable of entering into such a marriage in Pennsylvania and Ohio where it was terminated by the death of decedent.

"Ordinarily, the status of marriage continues during the joint lives of the parties or until divorce or annulment. This is true of a common law marriage. It has been said that the law seeks to make the marriage as permanent as possible without doing injustice. Thus, marriage cannot be revoked at the will of the parties." 35 American Jurisprudence, Section 7, Page 184.

A common law marriage remains in full force until it is dissolved by law or death of one of the parties, and is not destroyed by subsequent concealment of or maintenances of secrecy concerning the relationship between the parties. Catlett v Chestnut, supra.

"If the marriage status ever once comes into existence, it remains in full force thereafter until it is dissolved by law or death of one of the parties. Subsequent acts of concealment of or maintenance of secrecy concerning the relationship between the parties is not sufficient to destroy a marital status after it has once been assumed in contemplation of law." Catlett v Chestnut, 91 American Law Reports 223.

During the time the parties lived together as husband and wife in the state of Pennsylvania, that state was a common law state where common law marriages were recognized and protected, and during the time they lived together in Ohio in such relationship Ohio likewise recognized common law marriages.

Under the evidence in this case the law of the State of Pennsylvania governs the determination of the legality of the alleged common law marriage between appellee and decedent.

In Pennsylvania, "to constitute a valid common law marriage, it is only necessary that there should exist an agreement to be husband and wife, followed by cohabitation as

such." See Wandall's Estate, supra. "The consent of parties must be unequivocally evidenced, but it may be evidenced in any form or manner and verbally or by conduct alone and no particular form of expression is necessary." In re: Zemmick's Estate, supra. See also In re: Craig's Estate, 273 Pa. 530, 117 A. 221; Com. v Stump, 53 Pa. 132, 91 Am. Dec. 198; In re: Hines' Estate, 7 Pa. Dist. 89; Philadelphia Guardians of the Poor v Nathans, 2 Brewst., Pa., 149; Hantz v Sealy, 6 Bin., Pa., 405; In re: Callery's Estate, 226 Pa. 469, 75 A. 672.

In Ohio:

"An agreement to marry in praesenti, made by parties competent to contract, accompanied and followed by cohabitation, as husband and wife, with the result that they are treated and reputed as husband and wife in the community in which they reside, constitutes a common-law marriage.

"While such agreement to marry in praesenti must be proved by clear and convincing evidence, it may be established by proof of the acts, declarations and conduct of the parties and their recognized status in the community in which they reside." **Markley et al, v Hudson, (Markley) et al, 143 Oh St 163, 28 OO 81.**

"An agreement of marriage in praesenti when made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, they being so treated and reputed in the community and circle in which they move, establishes a valid marriage at common law, and a child of such marriage is legitimate and may inherit from the father." **Umbenhower v Labus, 85 Oh St 238.**

Our examination of the law of both states presuades us that there is no material difference in the decisions of the courts of Pennsylvania and Ohio with respect to the proof required to establish such common law marriage in those states respectively, and the authorities seem fully to sustain the proposition that if a common law marriage existed between decedent and appellee in Pennsylvania, Ohio will recognize such marriage.

"Where a valid common-law marriage has been entered into in a jurisdiction which recognizes the validity of such a marriage, the general rule is that it will be recognized as valid in another jurisdiction, regardless of the rule which prevails in the latter jurisdiction." 39 American Law Reports 559.

"The statement in the earlier annotation to the effect that,

if a valid common-law marriage has been entered into in a jurisdiction which recognizes the validity of such a marriage, it will be recognized as valid in another jurisdiction, regardless of the prevailing rule in the latter jurisdiction, finds confirmation in the later cases." 60 American Law Reports 546.

Weighing the evidence in this case in the light of the cited authorities, and others too numerous to state here, we reach the conclusion that the tests of a common-law marriage imposed in the state of Pennsylvania were met and that such marriage was valid in Ohio and in existence at the time of decedent's death in 1944.

It is apparent that appellee is a woman of very limited education and is uninformed concerning the law governing marriage, and when·she testified in the proceedings before the Industrial Commission she had in mind that a ceremonial marriage by a priest was necessary, and that "a large church wedding" and "a wedding party like other girls have" in which she would be presented with gifts were a prerequisite to marriage, but believed that some kind of a marriage relationship existed between her and decedent. In our opinion such lack of knowledge and confusion of mind accounts for the conflict in her testimony before the Industrial Commission of Ohio and in the probate court.

Counsel for appellant contends that having proved the ceremonial marriage to decedent a presumption arises that the common law marriage to appellee was terminated prior to the inception of her marriage to decedent. In this case the presumption is that the valid common law marriage between appellee and decedent continued until the latter's death and the burden is upon appellant, who claims the validity of her ceremonial marriage to decedent, to overcome such presumption, which burden we believe she failed to carry. **Industrial Commission v Dell, Exrx., et al., 104 Oh St 389.**

We are impressed by and concur in the reasoning found in the cases of Whalen v State, 12 O. C. C. 584, and **Evans v Industrial Commission, 17 Oh Ap 84,** where it is respectively said in the syllabi:

"In a prosecution for bigamy, the state having **proven the** first marriage and produced the first wife in person, or accounted for her existence, the presumption is that the status once established by law continues, and the state is not bound to prove that there was no divorce."

"Where it is proven that parties have been lawfully married, and both are living, such marriage relation, in the

.absence of proof to the contrary, is presumed to continue. .Such presumption will prevail as against the presumption of the regularity of a subsequent marriage to a third person by one of such parties."

Likewise since the presumption in this case is based upon facts identical with those in that case with respect to the worthiness of the parties to this law suit we are bound by the decision and certainly impressed by the logic of the supreme court in the case of Industrial Commission v Dell, Exrx., et al., .104 Oh St 389, where on page 403 it is said:

"In this case both wives appear to have been worthy women. Both were grossly imposed upon. It would seem to be a more reasonable doctrine to require the burden of proof to be placed upon the second wife, because it was not possible for the first wife to have followed her recreant husband all over the world in order to prevent another marriage of an unlawful nature, while it was within the power of the second wife to have made inquiry or to have insisted upon some information concerning Plumsteel's antecedents. It seems much better to insist that a little ordinary business prudence should enter into a prospective marriage, and that when a woman does not insist upon knowing something about the past life of the prospective bridegroom it is more reasonable that she should take the consequences of her imprudence than that the consequences should be visited upon a perfectly innocent lawful wife, who had no knowledge and no means of knowledge that the second marriage was about to occur."

In the instant case appellant met decedent in a cafe late in May, 1940, and married him on June twenty-fifth of the same year.

While the case of Industrial Commission v Dell, supra, is, as urged by counsel, distinguished from the case at bar by the fact that in that case both marriages were ceremonial marriages still we believe that difference does not destroy the effectiveness of that case as authority for the conclusion in support of which it is cited in this case.

Having reached the conclusion that the common law marriage between appellee and decedent was valid and not terminated at the time the ceremonial marriage between appellant and decedent was performed or at the date of decedent's death we believe that the trial judge was not in error in holding such ceremonial marriage was ineffective to defeat the rights

of appellee who is the lawful dependent in this case. We are not concerned with and do not pass upon the question whether the ceremonial marriage between appellant and decedent performed in West Virginia may be recognized as valid by the courts of that state.

We have given careful consideration to the evidence, the several contentions of counsel for the respective parties and the authorities cited in support thereof, and without attempting to distinguish some of them from the case at bar, quote further from the evidence, or cite additional authorities to support our conclusion, we believe that the trial judge did not err to appellant's prejudice in holding that appellee was the lawful dependent in this case or in any of the other respects set forth in appellant's assigned grounds of error and not disposed of hereinbefore.

The judgment of the probate court is affirmed.

NICHOLS, PJ, and CARTER, J, concur in judgment.